THE NORTHERN RAILROAD COMPANY *vs.* MILLER.

A subscription to the capital stock of a railroad corporation, whereby the subscriber promises *to take five shares of the stock, subject to the conditions, requirements, liabilities and benefits of the act of incorporation,* is equivalent to an express promise to pay for the stock, as it shall be called for by the directors.

If that form of words be not an *express* promise, it raises an *implied* promise to pay, equally efficacious with an express promise.

The only difference between an *express* and an *implied* promise is in the mode of proof. The legal consequences are the same in both.

The 4th section of the charter of the Northern Railroad Company, (*Laws of 1836, p.* 325; *Laws of 1845, p.* 351,) authorizing the directors to exact a forfeiture of the stock and previous payments, as a penalty for non-pay-

The Northern Railroad Company *v.* Miller.

ment of the installments, does not, before any forfeiture has been declared, impair the remedy of the directors to enforce payment by action at common law.

The statute remedy of forfeiture is *affirmative,* and contains no words *excluding* the common law remedy. In such cases the statute remedy is merely *cumulative.*

When the charter of a railroad corporation contains a clause authorizing the legislature to repeal or alter it, the alteration of the charter, by the legislature, made on the application of the directors, without consulting the stock subscribers, does not absolve the latter from their subscription.

THIS was an action brought to recover of the defendant certain installments on his stock subscription to the Northern Railroad Company. The pleadings were drawn under the code of 1848, and the action was commenced in November of that year. The complaint stated that the plaintiffs became a corporation under the act entitled " an act to provide for the construction of a railroad from the navigable waters of the great western lakes to Lake Champlain," passed May, 14, 1845, by a two-third vote, and by certain proceedings had under the same. That afterwards, the commissioners in the said act named, duly opened the books to receive subscriptions to the capital stock of the said corporation, as required by said act, and " thereupon on or about the first day of January, 1846, the *said defendant did subscribe for five shares of the said stock,* amounting to the sum of $250, and thereby *promised to take five shares of the said stock,* subject to the conditions, requirements, liabilities and benefits of the said act. and the said defendant then and there paid to the said commissioners the sum of two dollars and fifty cents, upon each share of said stock, so subscribed by him as aforesaid. It averred that the whole capital stock was subscribed and distributed by the commissioners, and said five shares, upon such distribution, were alloted and allowed to said defendant. It then set up the proceedings relative to the appointment of directors, and the organization of the company, and alledged that, " by means whereof, and by force of the said act and the said proceedings under the same, the said defendant became and was, and still continues, a stockholder of the said corporation, and liable to pay the said plaintiffs the sum

of forty-seven dollars and fifty cents for each share of said capital stock, so subscribed by him, as aforesaid, in such portions and at such times, as the directors of the said corporation should require." It then set forth the respective calls for five installments of ten per cent each upon the defendant's subscription, and demanded judgment thereupon with interest.

The answer admitted the act of incorporation, the organization of the plaintiffs as a corporation, the opening of the books of the company, the subscription of the defendant for five shares of the stock, and his payment to the commissioners of two dollars and fifty cents, on each share, so subscribed by him. It admitted that the whole stock was subscribed, and the corporation duly organized—that assessments were made, and calls published, as stated in the complaint, and that the defendant refused to pay. It set up as the excuse for such refusal, that after the defendant's subscription, and before any assessments had been made, and without the knowledge or consent of the defendant, or of any of the stockholders, the directors applied to the legislature of this state, for the passage of an act materially and in many essential particulars altering and varying the powers and liabilities of the said corporation and of the individual members thereof, and changing the terms upon which the defendant had become a subscriber to the said capital stock, and that the said legislature upon such application and without the knowledge or consent of the defendant, on the 9th of March, 1847, passed an act entitled " an act to amend the act to provide for the construction of a railroad from the navigable waters of the great western lakes to Lake Champlain, passed May 24, 1845," whereby the said corporation was authorized to borrow money for the construction of their road, to an amount not exceeding one half the sum actually paid by its stockholders, and also to pay interest to stockholders for stock payments made by them beyond general calls, and payments by the whole stockholders of the company, upon condition that the said company should construct their road with the heavy iron rail, weighing at least fifty-six pounds to the lineal yard, and whereby the said corporation were further authorized to con-

The Northern Railroad Company *v.* Miller.

struct one or more branch lines of railroad, to connect the line authorized to be constructed by their charter, with one or more lines of railroad to be constructed in Canada East—such branch lines and the construction and regulation thereof being subject to all the provisions of the act of May 14, 1845. " By means whereof, the defendant insists that he is exonerated and discharged of and from all liability for or on account of his subscription," &c.

The reply stated that the act incorporating the plaintiffs contained a section authorizing the legislature at any time to alter or repeal the act. It also stated that the plaintiffs had done no act under the act of March 7, 1847, and denied that they had adopted it; and said that if they had, it would not discharge the defendant from his stock subscription.

The cause was tried by Justice Hand at the St. Lawrence circuit, on the 19th of February, 1849, without a jury. The judge gave judgment for the plaintiffs, for the sum of $128,89 and interest, and certified that he found as a fact, in addition to the admissions in the pleadings, that the plaintiffs had adopted so much of the act of 9th March, 1847, as allowed them to pay interest to stockholders in certain cases, and as provided that the company should construct their road with the heavy iron rail; but that no proof was given that the plaintiffs had constructed, or had begun to construct, any branch line or lines of said road, whatever. The testimony was not set out, and there was no bill of exceptions attached to the record.

*Wm. C. Brown,* for the plaintiffs. I. The stockholders were not absolved from their liability to pay for their stock, by the amendment passed March 9, 1847. (*Laws of* 1847, *p.* 18.) The right to amend was reserved to the legislature by section seven of the original act. (*Laws of* 1845, *p.* 351.) Consequently every stockholder assented to the exercise of that power by the legislature. The amendment was an improvement of the charter, useful to the public and beneficial to the company, and in no way prejudicial to the stockholder. (*Hartford and New Haven Railroad Co.* v. *Croswell,* 5 *Hill,* 383. *Irvin* v. *Turn-*

*pike Co.* 2 *Penn. R.* 466. *Gray* v. *Monongahela Navig. Co.* 2 *Serg. & Watts,* 156.) The first section is only an express grant of power which had been impliedly granted by the original charter. (2 *Kent's Com.* 278.) And the second section does not differ materially from section eighteen of the charter. (*Laws of* 1836, *p.* 325 § 18.) There was no proof that the corporation had accepted of the amendment. (*Angell & Ames,* 55.) If the amendment had the effect claimed for it by the defendant, to dissolve the relations existing between the corporation and its stockholders, then the directors had no authority to apply for, or accept it; and if they did so, they were acting beyond the scope of their authority, and the corporation is not bound by their acts. (*McCullough* v. *Moss,* 5 *Denio,* 567.) II. An express promise to pay assessments was not necessary to render the defendant liable. (*Northern Railroad Co.* v. *Duane, MS. January term,* 1850.) The decisions to the contrary in *Andover and Medford Turnpike Co.* v. *Gould,* (6 *Mass. R.* 40,) and other Massachusetts cases, (8 *Id.* 138, 10 *Id.* 327, &c.) were based upon charters for the construction of turnpikes, in which the amount of each share was not fixed or limited, nor the amount of capital determined, and under which an assessment is in the nature of a tax, and not a call for the purchase price of the stock. Another class of cases in that state are based on the principle adopted in *Franklin Glass Co.* v. *White,* 14 *Mass. R.* 286,) that when the charter authorizes a forfeiture of shares for non-payment of assessments, no other remedy can be pursued. But it is settled in this state that the remedy by forfeiture is merely cumulative. (9 *John. Rep.* 381. 14 *Id.* 238. 14 *Wend.* 20. 21 *Id.* 275. *Id.* 296. 2 *Hill,*127. 2 *Barb. S. Court Rep.* 294. *2 *Comst.* 330.) In this state an implied promise is as obligatory as though expressed. The plaintiffs' charter provides that the capital stock shall be two millions of dollars, divided into shares of fifty dollars each, (*Laws of* 1845, *p.* 351, § 3;) the money to be expended in building a railroad from Ogdensburgh to Lake Champlain, for the benefit and profit of the stockholders. (*Id.* §§ 1, 2, 3. *Laws of* 1836, *p.* 351, § 14.) The defendant's promise to take ten

shares of this stock, clearly implied a promise to pay fifty dollars for each share. (*Spear* v. *Crawford*, 14 *Wend.* 20. *Hartford and New Haven Railroad Co.* v. *Kennedy*, 12 *Conn. R.* 499. *Same* v. *Croswell*, 5 *Hill*, 383. *Instone* v. *Bridge Co.*, 2 *Bibb*, 577. *Bend* v. *Susquehanna Bridge Co.*, 6 *Har. & John.* 128. 21 *Wend.* 273. *Id.* 296. 1 *R. S.* 600, § 5. 2 *Id.* 465, § 49.) III. The defendant not having made a case, setting forth the proof, the court will presume the best evidence was given for the plaintiffs which could have been admitted under the pleadings; and if an express promise was necessary, they will presume it was proved.

*J. Hutton*, for the defendant. I. The act of May 14, 1845, and the act of May 3d, 1836, referred to in the pleadings, are a contract between the state and the corporation; and these acts, with the agreement signed by the defendant, is a contract between the plaintiffs and the defendant, and constitute *a contract in writing*, between the parties. (*Dart. College* v. *Woodward*, 4 *Wheat. R.* 518. *Fletcher* v. *Peck*, 6 *Cranch's R.* 88. *Angell & Ames on Corporations*, 650, 1. 2 *Kent's Com.* 3d ed. 271.) II. The alteration of such contract by one of the parties, or with his assent, or by his procurement, without the consent of the other party, absolves such other party from all liability thereon. As to alterations in contracts generally, see *Chit. on Con.* 783, 4, *and cases there referred to, and* 2 *Phil. Ev.* 149, *and cases there cited.* As to alterations in legislative acts of incorporation, see *Hartford and New Haven R. R. Co.* v. *Croswell*, 5 *Hill*, 383, *and cases there cited;* also 10 *Mass. R.* 384; 8 *Id.* 268; 1 *N. Hamp. R.* 44, 81. III. The contract of the defendant was entered into with reference to the then existing laws of this state, and not in contemplation of laws thereafter to be enacted with a retrospective operation, and since his subscription it has been altered with the assent and by the procurement of the company, in the following particulars, viz.: (1.) The time for organizing, and commencing business has been extended. (*See Laws of* 1846, *ch.* 155, §1.) (2.) Authority has been given, by the act of March 9, 1847, to borrow

money, contrary to the provisions of law as it existed when the contract was made. (*See act of March* 9, 1847, *and ch.* 230, § 1 *of Laws of* 1845.) (3.) Also to pay interest to stockholders; in other words, to make dividends, without any surplus out of which to make such payments. (*See* § 2, *tit.* 8, *ch.* 8, *pt.* 1, *R. S. p.* 733, *3d ed.*) (4.) To construct an indefinite number of branch lines to connect with railroads in Canada East. (*See same act of March* 9, 1847.) As to operation of existing laws upon contracts, see *Chitty on Cont.* 90, 95; and *Wyman* v. *Mitchell*, 1 *Cowen's R.* 316. IV. These alterations in the contract have all been made on the application and by the procurement of the plaintiffs, without the knowledge or consent of the defendant. This is alledged in the answer and not denied by the reply. It is immaterial whether the altered contract has been acted upon. It is the *alteration* alone, which avoids the contract. V. The court will take judicial notice of all public acts of the legislature; and of private acts referred to by their title and date, in the pleadings. (*Code of Procedure*, § 163.) VI. The company have accepted and acted upon the amended charter. (1.) It is admitted that the company applied for the amendments, and that they were granted by the legislature on such application. Here is the *assent* of both parties, the legislature and the company, which *ipso facto*, effects the change in the terms of the contract. (2.) The company have manifested their acceptance of the amendments by their acts, and very slight ones are sufficient for that purpose. (*Angell & Ames on Corp.* 51, 2, 3. *Chitt on Cont.* 9, 10, 11, 12.) VII. The reservation of power to alter or repeal the charter has no application to this case. It is a power reserved to the legislature, to be exercised, if at all, for great public purposes, and to prevent abuses, and will not be exercised except on pressing emergencies, without the consent of the parties interested. (2 *Kent's Com. 3d ed.* 306, 7.) But if such alterations should be made, it would be at the option of the party not consenting thereto, to abandon the contract altogether. The legislature may doubtless repeal the charter, and thus resume the franchise granted, but can not change the terms of the contract or grant, without

The Northern Railroad Company *v.* Miller.

the consent of the parties to be affected by such change. (*Const.* *U. S. art.* 1, § 10. 3 *Story's Com.* 250, § 1379.) VIII. The doctrine of trusts does not apply to the relation between the directors and the stockholders of a corporation, as stated in the opinion of the supreme court in the case of The Northern Railroad Co. against James Duane, not reported. (See that opinion.) The directors are not trustees, in the ordinary acceptation of that term. They are mere agents, and are limited to the exercise of the powers conferred on them. The *bona fides* of an agent exceeding his powers, can not help him. He has not the discretionary powers of an ordinary trustee, and can not do what he may think best for his principal, but that only which he is authorized to do. (*Angell & Ames on Corp.* 252, 212, 213. (2 *Story's Eq. Jurisp.* 242, § 978.) IX. Where a substantive power is granted by the legislature, and a mode of executing it designated, it can be executed in no other way. The doctrine of cumulative remedies has no application to such a case. The power given in the plaintiffs' charter is "*to require* *payment of the sums to be subscribed,*" and the means of enforcing payment, is "*the forfeiture of their stock and of all* *previous payments thereon.*" (*Laws of* 1836, *ch.* 242, § 14. *Angell & Ames on Corp.* 419, § 4. 3 *Mass. R.* 40.) The forfeiture clause is to be deemed a statute mortgage to secure the payment of assessments, and in the absence of any collateral undertaking to pay, is to be taken as the only security held by the corporation for such payments. The subject is viewed in this light by the late Justice Cowen, in delivering the opinion of the court in the case of the *Herkimer Co. M. & H. Co.* v. *Small,* (21 *Wend. R.* 273.) See also *N. B. & B. Turnp.* *Cor.* v. *Adams,* (8 *Mass. R.* 138.) X. The written contract between the parties is that which can alone be enforced. It contains no express promise to pay assessments, and none is alledged, in the complaint, to have been made. Where the parties have reduced their agreement to writing, such agreement must prevail, and the law will *imply* no stipulations beyond the terms of it. The extent of the defendant's liability in this case is therefore to be measured by his *express,* and not

by any *implied* engagement. (*Angell & Ames on Corp.* 420 to 425. *New Bedford & B. T. Corp.* v. *J. Q. Adams,* 8 *Mass. R.* 138. *Franklin Glass Co.* v. *White,* 14 *Id.* 86. 6 *Id.* 40.) In all the cases in this state where there has been a recovery against a stockholder for assessments upon shares, an *express promise* to pay was either admitted or proved. (*See* 1 *Caines' R.* 381. 1 *Caines' Cas. in Error,* 86. 9 *John.* 47. 14 *Id.* 238. 21 *Wend. R.* 275. 2 *Hill's R.* 127. 11 *John.* 89.) XI. Notice of the assessments was required to be published in the state paper. (*Laws of* 1836, *ch.* 242, § 14.) This is not dispensed with by the plaintiffs' charter of 1845. Such publication is a *condition precedent* to plaintiffs' rights to enforce, by forfeiture or otherwise, the payment of stock assessments. This is neither alledged in the complaint nor was it proved on the trial. (*Chit. on Cont.* 737, *and cases cited.*) XII. No cause of action is stated in the complaint, which for that reason might have been demurred to. But defendant may avail himself of this objection in any other way. The court will reverse the judgment which the plaintiffs have obtained, if they have not alledged against the defendant a good cause of action. It was not necessary to state the objection, either by demurrer or answer. (*Code of Procedure,* § 148.)

*By the Court,* WILLARD, P. J. I. The contract of the defendant, created by his subscription for five shares of the capital stock of the plaintiffs' road, was an *express contract,* by which he was bound to pay for the said shares, according to the conditions, requirements, liabilities and benefits of the act of incorporation. No particular form of words is necessary to make an express promise. (1 *B. & Ad.* 415.) A subscription similar in all respects to that set up in this complaint, has been held to be an express promise to pay for the shares thus taken. (*Spear* v. *Crawford,* 14 *Wend.* 20, 23. 2 *Hall's S. C. Rep.* 505. *The Hartford and New Haven Railroad Co.* v. *Kennedy,* 12 *Conn. Rep.* 500. *Same* v. *Croswell,* 5 *Hill,* 383. *Mann* v. *Currie,* 2 *Barb. S. C. Rep.* 294.) In the foregoing

The Northern Railroad Company v. Miller.

cases, the point in question was either expressly or impliedly conceded.

II. If the subscription in question did not create an *express* promise, it raised an *implied* one; for the breach of which an action will lie. The cases cited under the preceding head, establish this position: "The only difference between an *express* and an *implied* contract, is in the mode of substantiating it. An express contract is proved by an actual agreement; an implied contract by circumstances, and the general course of dealing between the parties; but whenever a contract is once proved, the consequences resulting from the breach of it must be the same, whether it be proved by direct or circumstantial evidence." (*Per Lord Tenterden, in Marzetti* v. *Williams*, 1 *B. & Ad.* 414; 20 *Com. Law Rep.* 541.) The form of pleading under the former system, was the same in both cases. By subscribing for the stock, a duty was created to fulfill the requirements resulting from such subscription. One of these requirements is, that the stock shall be paid for at such times, and in such proportions, and on such conditions, as the directors shall prescribe, (*Laws of* 1836, *p.* 320, § 14,) which is a part of the charter of this company. (*See Laws of* 1845, *p.* 351.) The complaint alledges, and the answer admits, that five installments have been regularly called for, of ten per cent each, and remained unpaid by the defendant, at the commencement of this action; a duty was thus created to meet those calls as they were made. In general, it is said, that whenever the law imposes a duty or obligation, it raises a promise to perform, or to pay for the performance of such duty or obligation, for the breach of which assumpsit will lie. (*Leigh's N. P.* 3.) The cases on this subject are numerous, and will be found collected in all our elementary digests, under the head of implied assumpsits.

The objection taken by the defendant's counsel is, that as the 14th section authorizes the directors to exact a forfeiture of the stock, as a penalty for non-payment of the installments, no other remedy can be pursued, and therefore the law will raise no promise to pay.

There are two answers to this objection. The first is, the

defendant does not take the objection in his answer, but puts his defense upon an entirely different ground. Every material allegation of the complaint is expressly admitted in the answer. The cause of action, thus conceded, is sought to be avoided by new matter, which will hereafter be noticed. Nothing is said about a right to declare a forfeiture of the shares subscribed by the defendant. According to the principles of pleading adopted by the code, the defendant is not in circumstances to prove that the stock had been declared forfeited by the plaintiffs, even if the fact were so; nor is he permitted to urge, that such forfeiture might be exacted in any case. Under the plea of the general issue in the former action of assumpsit, such evidence, if material, would be admissible. The code has adopted a different rule, somewhat analogous to the pleadings in the late court of chancery. Evidence must now be confined to the matters put in issue by the pleadings, and the judgment must be founded on the allegations in the complaint admitted in the answer, or proved on the trial. (*See James* v. *McKernon,* 6 *John.* 543, *per Spencer, J.*) If the complaint does not state facts sufficient to constitute a cause of action, and the defendant fails to take the objection by demurrer or answer, he may, probably, insist on the objection in answer to a motion for judgment, before the judge who tries the cause, or on appeal to this court. (*Code,* § 148.) An objection has indeed been urged on the argument, to the sufficiency of the complaint. But it contains all the facts requisite to constitute a valid cause of action against the defendant. The legal conclusion resulting from the facts therein stated, is, that the plaintiffs should recover of the defendant the several installments which have been required to be paid, together with the interest.

The second answer to this objection is, that the *power* on the part of the directors to exact the penalty of forfeiture of stock for the non-payment of the installments, as they became due, is no objection to the plaintiffs' right of recovery in this action. If the 14th section of the act contained no clause denouncing a forfeiture for non-payment, there could be no doubt of the existence of a remedy at common law, upon the express or implied

contract, which has been before considered.   The statute remedy of forfeiture is affirmative, and contains no words excluding the common law remedy.   In such case, it is well settled that both remedies exist.   (2 *Inst.* 200.  *Clark* v. *Brown,* 18 *Wend.* 220. *Colden* v. *Eldred,* 15 *John.* 220.)

Since the decision by the court of appeals of the case of *Small* v. *The Herkimer Manufacturing and Hydraulic Company,* (2 *Comst.* 330,) a corporation, after forfeiting, pursuant to a provision in its charter, the stock of a subscriber for non-payment of an installment due upon his subscription, can not maintain an action to recover any part of such subscription. The judges who delivered the prevailing opinions in the court of appeals, conceded that the corporation might elect either to bring an action upon the contract, and recover the amount due on the subscription, or resort to the statutory remedy, and forfeit the stock.   But they held that they were concluded by their election; and having adopted, in that case, the statute remedy of forfeiture, they could not afterwards resort to a common law action.   It is well settled, however, by a long series of decisions, that the existence in the charter of authority to declare a forfeiture of the stock for non-payment of installments thereof, as they shall become due, affords no objection to an action at common law against a delinquent subscriber, upon a promise to pay the calls as they shall be required by the proper authority.   (*The Union Turnpike Co.* v. *Jenkins,* 1 *Caines' Rep.* 381. 1 *Caines' Cas. in Err.* 95, *S. C. The Goshen Turnpike Co.* v. *Hurtin,* 9 *John.* 217.   *The Dutchess Cotton Man. Co.* v. *Davis,* 14 *Id.* 238.   *Highland Turnpike Co.* v. *McKean,* 11 *Id.* 98.   *Spear* v. *Crawford,* 14 *Wend.* 20.   *Harlem Canal Co.* v. *Seixas,* 2 *Hall,* 504.   *The Worcester Turnpike* v. *Willard,* 5 *Mass. Rep.* 80.   *The Delaware and Schuylkill Canal Co.* v. *Sansom,* 1 *Bin.* 70.   *Instone* v. *Bridge Co.* 2 *Bibb,* 577.   *Tar River Navigation Co.* v. *Weal,* 3 *Hawks,* 520.   *The Hartford & New Haven Railroad Co.* v. *Kennedy,* 12 *Conn.* 499.   *The Same* v. *Boorman,* 12 *Id.* 530.)

It is conceded that in most of the foregoing cases there was an *express* promise to pay for the stock; and it is not denied

by the defendant's counsel that in such case, if no forfeiture has been exacted, an action will lie. But it is denied by him that the law will imply a promise to pay, in a case where the remedy of forfeiture is given in the charter. This objection has already been in part anticipated. It has been shown that the affirmative language of the statute in giving the remedy of forfeiture, does not take away the common law remedy upon the promise, whether express or implied; and that there is, in truth, no difference, with respect to the defendant's liability, whether the promise be express or implied.

This precise question was decided in Connecticut, in *The Hartford & New Haven Railroad Co.* v. *Kennedy,* (12 *Conn.* 500, *sup.*) The subscription in that case, after reciting the title of the act, was thus: "We do hereby subscribe to the stock of said railroad the number of shares annexed to our names respectively, on the terms, conditions and limitations mentioned in the said resolution." (*The Charter.*) The 13th resolution empowered the directors to require the payment of the sum or sums subscribed to the capital stock of said company, at such times, and in such proportions, and upon such conditions as they might deem fit; and in case any stockholder should refuse or neglect to make payment pursuant to the requisition of the board of directors, the stock of such stockholder, or so much thereof as should be necessary, might be sold by the directors, at public auction, after the lapse of six months from the time when the payment became due, &c. The action was assumpsit to recover the amount of certain assessments upon the ten shares of stock subscribed by the defendant. A recovery was resisted upon the same ground taken here, that no action would lie upon the subscription; that the law implied no promise, and that the only remedy was to sell the shares under the provision of the charter. But the court held that no particular form of words was necessary to create an express promise; that the language of the subscription, in connection with the charter, was equivalent to an express promise to pay the assessments as they should be made; and if not an express promise, they raised an *implied* promise, upon which the de-

fendant was equally liable as upon an express promise; and that the remedy by sale of the shares was merely cumulative, and did not impair the other remedy. Such is clearly the result of the learned opinion delivered in that case.

The case of *The Hartford & New Haven Railroad* v. *Croswell*, (5 *Hill*, 383,) and which is much relied upon by the counsel for the defense, under another point in this cause, was an action upon one of the same subscriptions as that upon which the supreme court of Connecticut gave judgment in the case just cited. And although the present question was directly involved in that case, it does not seem to have been noticed by the learned counsel who argued the cause, or by the chief justice who delivered the opinion of the court. The distinction between an *express* and *implied* promise to pay for stock under a charter which gives no other remedy in terms, for non-payment of the installments as they fall due, than forfeiture, has not been recognized in any case in this state to which we have been referred, or which has fallen under my notice. The point was directly involved in *Mann* v. *Currie*, (2 *Barb. Sup. C. Rep.* 294.) The action in that case was instituted by a receiver of the property and effects of the company, against the defendant, to recover the arrearages of a stock subscription. The bill merely alledged that the defendant was a stockholder, and owner of fifty shares of capital stock of the company, holding the scrip for the same. He was stated to have paid a certain part, and the remainder was alledged to be in arrear. It was not averred that any *express* promise had been made by the original subscriber to the stock; and the only defense urged was, that the defendant was the assignee of the original subscriber. The act under which that stock was created, was the act to incorporate the Canajoharie and Catskill Railroad Company, passed in 1830, (*Laws of* 1830, *p.* 293,) the 13th section of which is exactly like the 14th section in the plaintiffs' charter, except as to the newspapers in which the notice is required to be published. It is obvious that one was copied from the other. Yet the court held that the right of the company to enforce a forfeiture of stock and all previous payments, upon the failure

of a stockholder to meet the calls made by the company, will not prevent such company, or the receiver thereof, from collecting the balance due upon any share of the stock. If the distinction between an express and an implied promise had been material, it would have been noticed either by the counsel or the court.

I am aware that *Mann* v. *Currie* was decided, in part, upon the authority of *Mann* v. *Pentz*, decided by Vice Chancellor Sandford. (2 *Sandf. Ch. Rep.* 257.) The latter case, though affirmed by the supreme court sitting in the first district, was reversed by the court of appeals. (3 *Comst.* 415.) But the reversal did not turn upon the question we are considering. It went upon the ground, that the receiver appointed under the 36th section of the act concerning proceedings against corporations in equity, (2 *R. S.* 463,) could not sustain a bill, under that act, against a delinquent stockholder; but that the remedy of the judgment creditor, on the return of his execution unsatisfied, was by a bill in behalf of all the creditors of the corporation, as well as himself, against *all* the stockholders who had not paid up their subscriptions, under 1 *R. S.* 600, § 5.

The present question was not involved in that case. Speaking of the power of the receiver appointed under the 36th and 37th sections, to maintain a suit upon the subscription, Pratt, J. in delivering the opinion of the court, says that, " as representing the corporation, it is quite clear he could not. There is no express promise to pay in the subscription of the defendant; the only condition upon which he could have been made liable to the corporation, was by regular calls, made in pursuance of the charter. *The defendant had paid up all the regular calls made upon him ; and he was not, therefore, liable to the company ;* and the receiver, as representing it, can not maintain this suit." Surely, if the defendant in this case had paid up all the calls of the company, no action could be maintained by them for installments of stock not yet due, and of which payment had not been required.

The same principle was involved in *Spear* v. *Crawford*, (14 *Wend.* 20.) The action was founded on the 9th section of the

act incorporating the Harlem Canal Company, (*Laws of* 1826, *p.* 369,) by the plaintiff, a creditor of the company, against the defendant, a stockholder. It was shown that the defendant subscribed for sixteen shares of the stock of the company, but had never paid any part of it. The form of the subscription was thus: "We, the subscribers, do severally agree to take the shares by us severally subscribed in the Harlem Canal Company." The act incorporating the company, gave the remedy of forfeiture of the shares and all previous payments, for not complying with the calls of the company. The court held the action sustainable. Sutherland, J. in delivering the opinion of the court, says: "The promise of the defendant and the other subscribers, although it is in form to take the shares subscribed by them respectively, is, undoubtedly, (when taken in connection with what precedes it, and with the act of incorporation which is there referred to, and in part recited,) a promise, not only to take the shares, but to pay for them; to take them upon the terms and conditions set forth in the subscription paper; and the corporation could, undoubtedly, in the appropriate form of action, and upon a declaration containing the necessary averments, have enforced payment of the subscription price of the shares from the subscribers.

The case of *The Harlem Canal Co.* v. *Seixas,* (2 *Hall's S. C. Rep.* 505,) was an action brought to recover of the defendant the amount of his subscription to the stock of this same company. It was in that case objected, as it has been in this, that no action would lie, and that the only remedy was the forfeiture provided for in the 5th section of the charter. But the objection was overruled, and the plaintiffs were held entitled to recover. The form of the subscription is not set out *in hæc verba* in 2 Hall, but it was obviously the same as that set forth in *Spear* v. *Crawford,* (14 *Wend.* 20.) It was a promise *to take stock,* which was held in both cases a promise to pay for it, notwithstanding the clause of forfeiture.

The 13th section of the act relative to turnpikes, passed March 7, 1807, authorized the president and directors to demand from the stockholders respectively all such sums of money by them

subscribed, at such time and in such proportion as they should see fit, *under pain* of the forfeiture of their shares and all previous payments thereon to the said president and directors. (1 *R. L. of* 1813, *p.* 235, § 13.) In the case of *The President, Directors, &c. of the Goshen and Minisink Turnpike Road* v. *Hurtin*, (9 *John.* 217,) an action was brought upon a stock subscription, and in that case the promise was held to amount to a promissory note. But in delivering their judgment the court say, "The question which the parties undoubtedly had principally in view in this case is, whether an action will lie *at all*, on a promise by a turnpike stockholder to pay his installments ; and whether the remedy given to the company by the statute, to exact the penalty of a forfeiture of the shares, and of all previous payments, be not the only remedy." After remarking upon the *Union Turnpike Co.* v. *Jenkins*, (1 *Caines*, 381,) they say an action will lie ; thus holding the two remedies as cumulative. These remarks, it is true, were not essential to a decision of that cause, on the ground taken by the court, but they are believed nevertheless to be sound. They were so treated by Sutherland, J. in *Spear* v. *Crawford*, (14 *Wend.* 23,) and by the court of appeals in *Small* v. *The Herkimer M. & H. Co.* (2 *Comst.* 339, 342,) by Hoyt, J. and by Jewett, J. Indeed, in the *Dutchess Cotton Manufactory* v. *Davis*, (14 *John.* 244,) Chief Justice Thompson says the question whether an action will lie at all upon a promise by a stockholder in a corporation to pay his installments ought to be considered at rest in this court since the case of *The Goshen Turnpike Co.* v. *Hurtin*, (9 *John.* 217.) The general manufacturing law of March 22, 1811, (1 *R. L.* 245,) under which the case of *The Dutchess Manufacturing Co.* v. *Davis*, (*supra*,) arose, contained a clause imposing the pain of forfeiture of the stock and all prior payments if the calls of the directors should not be met in sixty days ; and it was strenuously urged by the defendant's counsel, but without success, that that was the only remedy. Although in that case there was an express promise, yet no stress was laid upon that fact. There can no case be found where the courts of this state have made any distinction between an express and an implied promise, with

reference to the question we are considering. They both plainly stand upon the same footing. If an action will lie in the one case, it will in the other.

The existence in the charter of a clause authorizing a forfeiture of the stock, for non-payment of the assessments made by the directors in pursuance of their authority for that purpose, affords no objection to this action. If there be no express promise to pay for the stock, the clause in question does not prevent the law from implying a promise to pay for the stock, by the party who subscribes to take it. By bringing an action to enforce the common law remedy, the corporation make their election, and can not thereafter resort to a forfeiture. It is enough, however, that no forfeiture has been exacted in this case, as had been done in *Small* v. *The Herkimer M. & H. Co.* (*supra.*)

III. It remains to consider whether the matter set up in the answer and proved on the trial, constitutes a defense to the action. This raises the question, whether the alteration of the plaintiffs' charter, by the legislature, on the application of the plaintiffs, without consulting the defendant, absolves the latter from his stock subscription. It is stated in the pleadings that the 7th section of the charter reserves to the legislature the right at any time to alter or repeal the act. (*Laws of* 1845, *p.* 357, § 7.) There is no averment in the answer that the alteration alledged to have been made, was prejudicial to the company, or to the defendant, but it is admitted by implication to have been made without his assent, unless such assent may be presumed from the relation which the parties bore to each other. The several acts constituting the charter are public acts, are referred to in the pleadings, and will be treated as part of the case. It therefore raises the naked question whether an alteration, *per se*, and irrespective of consequences, discharges a subscriber.

In the case of the *Northern Railroad* v. *Duane*, we held that the amendatory act of 1847, although obtained on the application of the directors, and without the assent of the defendant, did not absolve the defendant from the payment of his subscription for stock. And we intimated that the only ground on which the

alteration of a charter, on the application of the directors, should be treated as impairing their right to enforce a stock subscription, was that such application was made in fraud of the rights of the subscribers, and was a breach of trust. This remark was not necessary to a decision of that case. It conceded more to the defendant than the facts required or justified. But it was made from deference to some of the suggestions of the chief justice in *The Hartford and New Haven Railroad* v. *Croswell*, (5 *Hill*, 383.) As no fraud or breach of trust, on the part of the directors, was pretended, the court was not required to express an opinion upon a hypothetical case.

The ground assumed by the defendant's counsel, on the present argument, was, that any alteration of the act incorporating the plaintiffs, amounted to an alteration of the contract of the subscribers for stock, and authorized them to abandon the contract altogether. In effect, the defendant sought to apply the same objection to the plaintiffs' recovery, in this case, which a party to a written contract, that has been altered in a material part by the plaintiff, against the defendant's consent, might urge against a recovery thereon. In short, he treated the alteration of the charter, by the legislature, as working the same consequences upon the obligation of the defendant, as if the subscription paper itself had been altered in a material part by the directors of the railroad company. The case, according to the argument, would thus fall within the second resolution in *Piggot's case*, (11 *Coke*, 27,) which is, "That when any deed is altered, in a point material, by the plaintiff himself, or by any stranger, without the privity of the obligee, be it by interlineation, addition, erasing, or by drawing a pen through a line, or through the midst of any material word, the deed thereby becomes void." The doctrine that the alteration of an instrument by the party who claims a benefit under it, avoids the remedy thereon, was fully considered by the court in *Lewis* v. *Payn*, (8 *Cowen*, 71,) and in its general bearing is not questioned.

But before considering the *effect* of the alteration of the plaintiffs charter, it will be convenient to consider what alterations therein were in fact made, and by whose authority. The act of

The Northern Railroad Company v. Miller.

the 9th of March, 1847, (*Laws of* 1847, *p.* 18,) is the one complained of. The first section authorizes the plaintiffs to borrow money for the construction of their railroad, to an amount not exceeding one half the sums actually paid by its stockholders, and also to pay interest to stockholders for stock payments made by them, beyond general calls, and payments by the whole stockholders of the company; provided, however, that the said company shall construct their road with the heavy iron rail weighing at least fifty six pounds to the lineal yard, and not otherwise. The second section authorizes them to construct one or more branch lines of railroad to connect the line authorized to be constructed by the act above mentioned, with one or more lines of railroad to be constructed in Canada East; such branch lines and the construction and regulation thereof to be subject to all the provisions of the act incorporating said company. The judge who tried the cause certifies that no proof was given, on the trial, that the plaintiffs had constructed, or had begun to construct, any branch line or lines of railroad whatever, but that the plaintiffs had adopted and acted upon that part of the amendatory act which allows the plaintiffs to pay interest to stockholders in certain cases, and requires them to use the heavy iron rail.

The reason for the other amendment, which permits the plaintiffs to connect their road with one or more roads that might thereafter be constructed in Canada East, were suggested in the opinion of the court in the case of the present plaintiffs against Duane, (2 *Am. Law Journal, N. S. No.* 11, *for May,* 1850,) and will be obvious to any person who will compare the 18th section of the law of 1836, p. 326, which forms a part of the charter, with the amendatory law of 1847. No part of the alteration changed the location or identity of the road, or the amount of the stock, or cast any additional burthen upon the company, or any of its stockholders. The act merely extended to the company a privilege, which they were at liberty to accept or decline at their pleasure. These were all the alterations, insisted on in the answer, as exonerating the defendant from his subscription

On the argument it was further contended, that the act of
May 9, 1846, which enacts that the 7th section of title third,
chapter eighteenth of the first part of the revised statutes, shall
not be so construed as to apply " to any act for incorporating a
railroad company, which has or shall have in its own provisions
the terms and the time in which it shall be forfeited for non-
user," amounted to an alteration of the plaintiffs' charter.   The
7th section of the general law of 1830, above referred to, de-
clares that if any corporation thereafter created by the legisla-
ture should not organize and commence the transaction of its
business, within one year from the date of its incorporation, its
corporate powers should cease.   The 2d section of the act of
1845, p. 351, incorporating the plaintiffs, gave them *three years*
from the passage of the act, within which to commence their
road.   The act of 1846, therefore, is merely a declaratory act,
the effect of which is to declare that the limitation of one year,
within which to commence a railroad, should not apply to a case
where a longer time was given by the charter.   This act is no
alteration of the charter, but in affirmance of it, and even if
relied on in the answer, would afford no defense.

Having thus shown what the alledged alterations complained
of are, we are next to consider whether they afford the defend-
ant a legal excuse for withholding the payment of his sub-
scription.

The first position taken by the defendant's counsel is, that the
acts of May 14, 1845, and May 3, 1836, (the plaintiffs' charter,)
are a contract between the state and the corporation ; and these
acts with the agreement signed by the defendant, are a contract
between the plaintiffs and the defendant, and constitute a con-
tract in writing between the parties.   To prove this, the case
of *Dartmouth College* v. *Woodward*, (4 *Wheat.* 518,) and
*Fletcher* v. *Peck*, (6 *Cranch*, 88,) are cited.   If we concede
this to be so, an act of the legislature altering the charter
would be in conflict with the constitution of the United States,
and a nullity.   Such void act, it is conceived, could not success-
fully be interposed by the defendant, as a bar to the plaintiffs'
right of recovery.   A void law is as no law.   If the defendant

can show the law in question to be a nullity, he overthrows at once the whole structure of his defense.

The defendant's counsel, however, does not push his argument to that extent. He assumes that the amendatory act is constitutional. He insists that this amendatory act is an alteration of the contract of one of the parties, or by his procurement, without the assent of the other party, and that it absolves such other party from all liability on his contract.

It is proper then to inquire who are the parties to the contract, created by the granting and acceptance of a charter of incorporation. These are, primarily, the state which makes the grant, and the trustees, directors or other persons, by whatsoever name they are called, by whom the affairs of the corporation are managed. The corporators or stockholders by whom the funds are advanced, and who expect to be reimbursed by the profits on the business of the company, are also parties. The corporation itself, which is the offspring of the charter, and is an artificial being, invisible, intangible, and existing only in contemplation of law, is also, in a certain sense, a party. But as the latter can only act through the medium of its trustees, directors, or other managers, it is more proper to say that the state, the trustees, &c. and the corporators are the parties to the contract. (4 *Wheat.* 636, 643, 657, 700.) It is not denied that an act of the legislature, altering a charter in a material respect, without the consent of the corporation, is an act impairing the obligation of the contract, and is therefore unconstitutional and void. (*Dartmouth Coll.* v. *Woodward,* 4 *Wheat.* 518.) That principle is only applicable to charters, where a right to alter or repeal them has not been reserved in the original grant. The decision of the supreme court of the United States, in the case last cited, led to the adoption of the practice in this state, of inserting, in most of the acts of incorporation subsequently granted, a clause reserving to the legislature the right to alter or repeal them. In the general act relative to the powers, privileges and liabilities of corporations, which passed the legislature in December, 1827, (1 *R. S.* 599,) it is provided that charters of every corporation, thereafter granted by the

legislature, shall be subject to alteration, suspension and repeal, in the discretion of the legislature. And for greater caution, the seventh section of the act of 1845, incorporating the plaintiffs, in express terms enacts that the legislature may, at any time, *alter* or repeal that act.

While, therefore, the act incorporating the plaintiffs is a contract to which the state in its sovereign capacity, the directors and corporators, or individuals subscribing for the stock of the company are parties, it is a contract in which, by the agreement of all parties, a right is reserved to the legislature to alter or repeal it. It was competent for the state, having the power to grant or to withhold the charter, to annex such condition to the grant, or to make such reservation as it pleased. The directors, trustees or other managing agents, by whatever name they are called, by accepting the charter became bound by this condition or reservation; and every individual who subscribes to the stock of the company, thereby makes himself a party to the contract, subject to the conditions and reservations of the charter. In effect he stipulates, at the time he subscribes, that the legislature may alter or repeal the law, and thus change the obligation of his subscription or defeat it altogether. It can not, therefore, with truth be said, that the amendatory act, which is complained of in this case, was an alteration of the defendant's contract, *without his assent.* It was merely such alteration as he himself, by becoming a party to the contract, had agreed that the legislature might make. He is as much bound by it as if he had signed a petition to the legislature, requesting the passage of the act in question. Whatever modification is thus effected in the obligation created by his subscription is made by his own agreement, entered into at the moment he became a party to the contract, and is as binding upon him as if it had been accomplished by his own solicitation and procurement. It surely can not be necessary to cite authorities to prove, that what a man authorizes another to do, is as obligatory upon him, when done, as if it had been performed by himself.

Great stress was laid by the defendant's counsel, on the assumed fact that the act of 1847 was passed at the *procure-*

*ment* of the plaintiffs, and against the *assent* of the defendant.
So far as the objection springs from the want of *assent* of the
defendant, it has been shown to be unfounded in fact. The
defendant, when he subscribed for stock, yielded his assent to
any alteration which the legislature might make. He can not,
therefore, with truth say, as was urged by his counsel, "*non
hæc in fædera veni.*" The alteration in question must be pre-
sumed to have been within his contemplation when he signed,
and a part execution of the contract into which he entered.
Nor is there any force in the other suggestion, that the act
was passed at the solicitation of the plaintiffs. It is enough
that the legislature had a right to pass it. The motives by
which they acted, or the influences by which they were gov-
erned, whether good or bad, can never be the subject of discuss-
ion in a judicial forum. Whether the alteration was the spon-
taneous exercise of legislative power and suggested by their
own wisdom, or was prompted by others, is wholly immaterial.

This is a mere civil action between the plaintiffs on the one
side and the defendant on the other, to which the state is in no
sense a party. Both parties derived their title under a statute
which they respectively agreed the legislature might alter at
its pleasure. In such a contest, as was said by the court in
*Fletcher* v. *Peck*, (6 *Cranch*, 87,) the court can not inquire
into the motives which actuated the legislature. If they could
constitutionally pass the act, the court can not sustain a de-
fense, founded on the allegation, that the act was passed at the
request of the plaintiffs. In *Fletcher* v. *Peck*, the supreme
court of the United States held that in a suit between two
individuals, the allegation that the act of a legislature was null
in consequence of the impure motives which influenced certain
members of the legislature which passed the law, could not be
entertained. If *corruption* could not be urged in this case
against the law, much less could influence of an honest charac-
ter; and none other is pretended.

The case of *The Hartford & New Haven Railroad* v.
*Croswell*, (5 *Hill*, 383,) is not in conflict with the foregoing
reasoning. In that case it did not appear that the legislature

had the power to alter the charter, except on the application of the parties interested. The alteration was made without the assent of the defendant. It superadded a new and different business to that contemplated by the original charter, and nearly doubled the capital stock. These points of diversity are enough to show that it does not sustain the doctrine urged by the defendant's counsel.

The foregoing remarks dispose of this case. But there were some subordinate questions started on the argument, which, in conclusion, will be briefly noticed. Thus, it was said that the contract of the defendant was entered into with reference to the then existing laws of this state, and not in contemplation of laws thereafter to be enacted, with a retrospective operation. If this objection be well founded, it is not perceived why it would not apply to all contracts between individuals, upon any other subject. The principle, carried out to its consequences, would vacate every agreement, if society made progress between the date of the contract and the period of its performance. It would require legislation to cease, for fear that individuals would repudiate. It would place the changes incident to human affairs, in the same category with those which are created by fraud or violence ; a doctrine leading to such results, can not be sound. Again, it is said that allowing interest to stockholders on sums advanced beyond general calls, is allowing dividends without a surplus, contrary to the 2d section of title 4 of the act relating to certain corporations. (1 *R. S.* 601.) Suppose it is. Could not the power which created the second section, dispense with it ? If two laws passed by the same legislative authority, conflict with each other, must not the one last enacted, prevail ?

It is believed, however, that the two enactments may in this case be reconciled. But whether they can be, or not, is immaterial.

There is no error in the judgment of the circuit court, and it must be affirmed.

HAND, J. dissented.