T. A. Johnson, J.
The complaint is sufficient, if the facts established by the evidence make out a cause of action. It alleges that the defendant, by reason of the facts set forth, became liable to pay, and had neglected and refused to pay, the amount or any part thereof. Independently of the amendment of the charter and the questions growing out of that, the facts alleged, upon which the legal liability is predicated, in the complaint are, the subscription to the stock and the various calls for payment made by the directors. If the writing itself is to be construed as an express promise to pay the amount of the several shares taken, in money, it is clearly sufficient. On the contrary, if the agreement to take stock does not, in itself, contain a promise to pay, but the law creates- the obligation to pay as the calls are from time to time made in pursuance of the charter and by-laws, it is equally sufficient, without in terms averring a promise. The Code requires only a plain and concise statement of the facts constituting the cause of action; and if the facts are sufficient to create the liability, it is enough to say that the defendant thereby became liable. That is equivalent to an allegation of a promise, where the objection is not taken by demurrer *343 and must be held good in substance. Obligations of 'this character are in fact created rather by the dictate of the law than the .assent or agreement of the party; and the person upon whom they are imposed is obliged to perform them, or render an equivalent in damages, whether he assents or dissents. As was said by Lord Holt (1 Ld. Raym., 538), “the notion of promises in law is a metaphysical notion;” and it is the facts from which the promise springs that are issuable, and not the promise itself.
In the view I take of this case, as respects the right of action upon the evidence, it is not necessaiy, in order to sustain the action, to hold that the written agreement is an express promise to pay for the stock subscribed; because, if it is not an express promise, it is entirely clear, I think, in a case like this, that the law creates the obligation and implies the promise to pay. If, however, the agreement to pay is expressed by the terms or fair legal import of the writing subscribed, that is to control, and the law raises no presumption whatever.
It will be found not a little difficult, I think, to demonstrate that the writing subscribed by the defendant is an express written promise to pay money. There are no such words in the writing, and no words which necessarily or naturally, in themselves, import a promise to pay any particular amount, or, indeed, any amount whatever. He agrees to take the number of shares of stock subscribed by him, “subject to all the liabilities and penalties of the charter and by-laws of the said corporation.” In order to make out that it contains a promise to pay, it is necessary to resort to proof aliunde, and show that either the charter or the by-laws, in express terms, impose the duty absolutely upon every subscriber to the stock to make payment. If that was made to appear, the words, “subject to the liabilities and penalties of the charter and by-laws,” might be construed into an undertaking to perform that duty. The by-laws, however, are not before us, and were not made *344 evidence, and we can only refer to the terms of the act of incorporation. The 4th section of the act (Laws of 1845, ch. 336) makes it the duty of the commissioners, at the time of any subscription to the capital stock by any person, to require the payment to them of $5 towards and upon every $100 so subscribed, and makes the subscription void unless such payment is made. The 14th section gives the directors power to require payment of the sums to be subscribed, .in such proportions and upon such conditions as they shall see fit, under the penalty of forfeiture of the stock subscribed and all previous payments. This section obviously was not intended to impose the duty or obligation of making payment upon the subscriber; but to confer the power upon the directors of forfeiting the stock and all the subscriber had paid, in case of his neglect or refusal to pay according to the requisition of the directors. It was a power simply conferred in the nature of a remedy against the subscriber; but it constituted no part of his duty or obligation to pay for his stock. This is all that is to be found in the charter on the subject of payments by a subscriber, and it adds nothing to the force of the agreement as an undertaking to pay. The liabilities and. penalties referred to must be construed to mean those of losing the stock subscribed by forfeiture, in case of non-compliance with the calls of the directors for payment. Aside from this clause, it is simply an agreement to take twenty shares of the capital stock of the corporation; and when the defendant had subscribed his name and paid his five per cent, the effect was to make him a stockholder and the owner of the twenty shares, subject to the forfeiture prescribed. He was then, to all intents and purposes, a corporator: but this I shall consider more fully hereafter. There is but one case in this state, that I am aware of, holding directly that a subscription to stock, similar in terms to this, is an express agreement to pay in money the nominal amount of the shares subscribed. That is the case *345 of The Northern Railroad Company v. Miller (10 Barb., 260). The case of Spear v. Crawford (14 Wend., 20) is relied upon, but the question did not arise in that case. The question there was, whether the defendant became a stockholder by subscribing, and not whether the subscription was a promise to pay for the stock as well as an agreement to take it. And, besides, the terms of the memorandum subscribed in that case were different from this. It contained, amongst other things, a recital of the time and manner in which the „ amount subscribed should be paid. In most, if not all, the other cases referred to, the promise to pay was contained, in terms, in the subscription, except that of The Hartford and New Haven Railroad Company v. Kennedy (12 Conn. 500). In that case, the writing subscribed was, in terms, very much the same as this, and the court held that it was equivalent to an express promise to pay, taken in connection with the charter. Perhaps, in that case, the construction was warranted by the terms of the charter. But to hold under this charter, or that of the Northern Railroad Company, which was like this, as they were originally granted, that such an agreement is an express agreement to pay a given sum of money, would be adopting a latitude of construction altogether unwarranted as well as unnecessary. It would be necessary either to interpolate terms or to give a forced and unusual meaning to those the party has employed. I am of opinion, therefore, that the agreement which the defendant subscribed is only an agreement to take.the stock of the corporation.
But upon this, undoubtedly, the law raises an undertaking to pay the amount subscribed. It is contended by the defendant’s counsel that an implied promise can only be raised upon a past consideration, upon some benefit or advantage which has already accrued to the party upon whom the obligation is presumed to rest. This is conceded.. But, as we have seen, the interest in the twenty shares of stock subscribed vested in the defendant the moment his sub *346 scription was complete. And this obviates also the other difficulty suggested by the defendant’s counsel of a want of mutuality on the part of the plaintiff. The contract was executed on the part of the plaintiff when the defendant became a stockholder. That the defendant became a stockholder in the corporation, and the owner of the shares subscribed for, is fully settled in Spear v. Crawford (supra). Indeed, the power of forfeiture given to the directors in the charter must proceed upon the assumption that the subscriber becomes the owner of the stock. The interest, acquired by the subscription is a good consideration to support an action for the amount subscribed by the subscriber.
(Ang. & Ames on Corp., 474.) If this is not so, and the agreement is to be regarded as merely executory between the parties, to deliver stock on one side when paid for and to pay on the other, it would clearly fail for want of an undertaking on the part of the plaintiff to deliver. There would be no mutuality whatever. The defendant’s counsel insists that the defendant could not become a stockholder until his stock was apportioned or set off to him by the commissioners appointed to receive subscriptions. The charter, however, only provides for a distribution in case of an excess of subscriptions over the amount of stock. But that fact is not shown, and is not to be presumed in the absence of evidence. If no more than the amount was subscribed, the commissioners had no power to distribute, and the several subscribers would be the stockholders holding the number of shares respectively taken. Had it been shown that the amount subscribed before the books were closed was greater than the whole capital, the plaintiff would have been compelled to prove, in order to fix the defendant’s liability, that the amount subscribed, or sóme other amount, had been awarded to him in the distribution; because, in such a case, as the amount of stock cannot be increased, a distribution becomes necessary in order to determine who are the stockholders, and the number of shares each is entitled to, and *347 the subscriptions are made subject to such right or power of distribution, if the state of the subscription shall render its exercise necessary. The presumption of law, however, must be, I think, that the books were closed the moment the stock was all taken by subscription, and thus the title of the several subscribers to the number of shares respectively taken, subject to forfeiture by the directors for nonpayment, became perfect the moment the books were closed.
The certificate is not essential to the ownership. It is mere evidence of title, which the owner may require at any time, and which the court would compel the corporation to deliver to the person entitled. (Ang. & Ames on Corp., 476; Chester Glass Company v. Dewey, 16 Mass., 94; Spear v. Crawford, supra.) The plaintiff is not deprived of the remedy by action to recover the amount subscribed, because the power to forfeit the stock for non-payment is conferred by the charter upon the directors. That is a cumulative remedy merely. The corporation may lose the right of action by first resorting to remedy by forfeiture, for the reason that the forfeiture operates as a rescission of the contract, and the contract being ended no foundation remains for an action to rest upon. This was settled in the case of Small v. The Herkimer Manufacturing Company (2 Comst., 330). But as long as the contract remains in force, an action to recover for the amount of stock taken may be maintained by the corporation against a subscriber. And it makes no difference whether the promise to pay is express or implied. The legal consequences of the undertaking to pay must be the same, whether it is express or ' such as the law implies merely. Several cases decided in other states were cited upon the argument to sustain the position that the corporation must resort to the remedy by forfeiture, in the case of an implied promise to pay for the stock subscribed, and could maintain an action only upon an express promise to pay. I am unable to perceive any *348 solid grounds upon which such a distinction can rest, It has never obtained in this state, and I cannot see how it can be maintained upon principle. For aught I can see, the rights of the subscriber and of the corporation are precisely the same in either case. This point was fully considered in The Northern Railroad Company v. Miller (10 Barb., 260), in the able and elaborate opinion of Mr. Justice Willard, and the distinction shown to be entirely destitute of foundation.
The subscription having been valid, so as to give a right of action, in case of non-payment, to the corporation, did the alteration of the charter and the extension of the road subsequently absolve the defendant from his liability upon such subscription? This question is, I think, entirely settled by the decision of this court in the case of Schenectady and Saratoga Plank Road Company v. Thatcher (1 Kern., 102). The right to alter was reserved in the charter, and the subscription must be taken to have been made subject to having such additional powers conferred as the legislature might deem essential and expedient. The change is not fundamental. The new powers conferred are ii%dentical in kind with those originally given. They are enlarged merely, the general objects and purposes of the corporation remaining still the same.\It may be admitted that, under’ this reserved power to alter and repeal, the legislature would have no right to change the fundamental character of the corporation and convert it into a different legal being, for, instance, a banking corporation, without absolving those who did not choose to be bound. But this they have not attempted to do. The additional powers are of the same character, and have been regularly acquired from the legitimate source of power, and if they have been fairly exercised, the defendant, although the change may have operated to his pecuniary disadvantage, is still bound by his undertaking, jit is no breach of the agreement betweén. the plaintiff and the defendant. It might, perhaps, be *349 inferred from some expressions in the opinion of Parker, J., in the Schenectady and Saratoga Plank Road Company v. Thatcher (supra), that that case turned in some measure upon the fact that there was no suggestion or proof of injury to the defendant’s interests resulting from the change complained of. It is obvious, however, that the decision was not based upon any such consideration. It is manifestly a question of power; and if the power was legitimately acquired, and has been exercised without fraud, the rights of the parties are in no respect changed as between themselves, whether the alteration is bene- - ficial or injurious to the defendant’s interest. Whether he has made or lost by the change, in no respect affects the question of authority in the plaintiff. How far bad faith and fraud on the part of the corporation, in the exercise of its powers, might affect the undertaking of a subscriber and member of the corporate body, is a different question. It is clear that the declaration of one of the directors at a public meeting, even though made in the presence and hearing of all the other officers, can have no effect in this action one way or the other.
There was, in my judgment, no evidence offered by the defendant which could have any legitimate tendency to prove bad faith or fraud on the part of the plaintiff towards the defendant as a subscriber and stockholder. If it could be made" to appear, ever so clearly, that one object the directors had in extending the road to Buffalo was to defeat the prosecution and completion of a rival route in which the defendant had taken stock, that fact would not show, or tend in any degree to show, that it was done in bad faith, or in fraud of the defendant’s rights as a stockholder in this company. The same may be said of the evidence offered as to the cost of the road from Attica to Buffalo. It had no legitimate bearing upon the issue of fraud, no perceptible tendency in that direction, and was properly excluded as incompetent. Questions of fraud are *350 generally questions of fact for a jury; but it is the duty of the court, especially when objections are taken, to see that relevant and. pertinent evidence only is submitted to them on the question. The issue was fraud or bad faith towards the defendant, in his capacity or relation of subscriber and stockholder in this corporation, which would affect his undertaking to pay, and place him in a position to rescind. It can never be alleged that the additional powers were fraudulently granted by the legislature; and if it was lawful for the-corporation to exercise the power it did, it is difficult to see how it could be proved to have been a fraud thus to exercise it. But, however this may be, there was, I think, nothing offered or put in evidence which ought to have been submitted to a jury on the question of fraud.
I am therefore of opinion that the case was correctly disposed of at the circuit, and that the judgment should be affirmed.
Selden, J.
The first objection made to the recovery in this case is, that no promise to pay for the stock is either averred or proved. The defendant subscribed twenty shares to a paper, the terms of which were as follows:
[The learned judge here stated the language of the subscription.]
There .can be no doubt -that an agreement to take a certain number of shares of the capital stock of an incorporated company creates an obligation to pay for the shares so to be taken. In respect to this, it can hardly be necessary to do more than to refer to the cases of Spear v. Crawford (14 Wend., 20); The Northern Railroad Company v Miller (10 Barb. S. C. R., 260); The Hartford and New Haven Railroad Company v. Kennedy (12 Conn., 500). I have no hesitation in adopting the conclusions arrived at in those cases upon this point. In the first two, the language of the subscription wras substantially identical with that used in this case; *351 and in the last, terms still less explicit were held to import an agreement to pay for the stock.
But it is insisted that the promise to pay, if any exists, arises by implication alone, and that to give a common law remedy by action, in addition to the statutory remedy by forfeiture provided by the charter, it is necessary that there should be an express promise. To this it may be answered that it is by no means clear that the promise is to be regarded as implied merely. On the contrary, as I understand the distinction between express and implied promises, that existing in this case belongs to the former class. An express promise is one which is expressed in words. No particular form of words is-essential to such a promise; but if the language used, when fairly interpreted, imports an undertaking to pay, this, I apprehend, constitutes an express promise. The letters I. O. TL, which have been held to amount to a promissory note, constitute an express promise no less than if the words “I promise to pay” had been used. An implied promise, on the other hand, is one which is not deduced from the language of the party, but which the law raises upon principles of equity and justice, in view of some consideration received. In this case a promise to pay is necessarily embraced in the agreement to take stock, subject to the “liabilities of the charter.” As there was no way in which the defendant could take stock agreeably to the charter without paying for it, an agreement to take of course included a promise to pay, and this I apprehend must be considered an express promise.
If, however, it be considered as belonging to the class of implied promises, the consequences would be the same. I am not aware of any distinction, so far as the remedy is concerned, between an express promise and one which exists by implication of law. The promise being once raised, the obligation imposed is as binding and effectual in one case as in the other. The precise point made here was fully considered in the cases of The Hartford and New Haven *352 Railroad Company v. Kennedy and The Northern Railroad Company v. Miller (supra), and overruled in both. In the former case, Huntington, J., says : “ But if the 13th section provides the only remedy to enforce the payment, and therefore excludes an implied promise, it is not readily perceived why it should not cause an express promise to be legally inoperative. There is no other consideration to support the latter than that which sustains the former. It is precisely the same in both. The moral obligation to pay is equally strong in both.’.’ In the other case, Mr. Justice Willard holds similar language. He says: “ There can no case be found where the courts of this state have made any distinction between an express and an implied promise with reference to the question we are considering. They both plainly stand upon the same footing. If an action will lie in the one case it will in the other.”
I entirely concur with these learned judges, and can see no foundation whatever in principle for the distinction attempted to be made. The doctrine of the numerous cases in which it has been held that an action at law will lie upon such a subscription, notwithstanding a clause in the act of incorporation providing for a forfeiture of the stock in case of non-payment, is, that the remedy by forfeiture is cumulative merely, and does not operate to take away any other remedy afforded by the common law. It clearly can make no difference in the application of this doctrine, whether the promise, upon which the common law remedy by action is founded, be express or implied.
The next objection is, that there was no consideration for the promise, and no mutuality in the agreement. It may, perhaps, be conceded that, in that class of cases in which the existence of the corporation is made to depend upon certain conditions precedent, a subscription made before the performance of the preliminary conditions would, upon strict common law principles, be of no validity until the incorporation was perfected. Nothing can be more *353 clear than that, by the common law, there must be at least two parties to every contract. No promise is binding unless made to some competent person, either natural.or artificial. There must be a promissee as well as a promissor. In the case supposed, as the corporation would have no legal existence at the time of the subscription, it could not be the recipient of a promise. If, therefore, we reason from the principles of the common law alone, such a subscription would be invalid, and might be withdrawn at any time before the completion of the incorporation. But, in such a case, if the party subscribing suffers his subscription to remain unrevoked until the incorporation is perfected, I see no reason why his subscription does not, upon ordinary principles of law, become obligatory. He would be in a position analogous to that of one who had made a proposition which had remained fora considerable time unanswered, and which he might at any time have recalled, but which he had suffered to stand unrevoked until it was accepted by the other party. It would then be too late to recede. The case of Stanton v. Wilson (2 Hill, 153) is a case substantially of this description. There the court held that the contract took effect on the day when the corporation came into existence, although the subscription was made long before; and I see no reason why the principle adopted in that case is not applicable here. There was, it is true, no corporation formed when the defendant subscribed, and consequently no consideration then for his promise, nor mutuality in the contract. But the corporation came into existence, by the terms of the charter, as soon as the stock was distributed. When a subscription is made to the capital stock of an existing corporation, if the corporation accepts the subscription, it no doubt impliedly undertakes that the subscriber shall have and enjoy a share of its property and franchises, corresponding to the amount of the subscription. So in the present case, the law would raise by implication such a promise on the part of this corpora *354 tion the instant it was brought into existence ; and as the defendant had suffered his subscription to stand unrevoked up to that time, it was the same in effect as if then for the first time made. In this way both mutuality and a sufficient consideration are shown.
But there is another view of the question, which would seem to render it unnecessary to resort to this reasoning in order to establish the liability of the defendant. The rules of the common law, in regard to consideration and mutuality, do not apply to the case. Those rules may, I think, be regarded as superseded by the statute, which not only expressly authorizes subscriptions to be made in anticipation of the existence of the corporation, but impliedly, at least, recognizes their validity. Section 4 of the act by which the plaintiffs ' are incorporated provides,, among other things, as follows: “ And the said commissioners shall, at the time of any subscription, require the payment to them, by the person or persons subscribing, of five dollars towards and upon every hundred dollars so subscribed, and unless the same shall be paid the subscription shall be invalid.” This plainly implies that if the required payment is made the subscription shall be valid. But even without this clause it would, I think, be held that a statute which authorizes subscriptions in view of a subsequent incorporation, and regulates the manner in which they shall be made, must necessarily have the effect to give validity to such subscriptions, if made in accordance with the requirements of the act.
The point made by the defendant upon the alteration of the plaintiff’s charter, changing the name of the corporation and authorizing the extension of its road from Attica to Buffalo, must, I think, be considered as sufficiently answered by the decision of this court in the case of The Schenectady and Saratoga Plank Road Company v. Thatcher (1 Kern., 102). The power reserved to the legislature in the original act of incorporation, to alter or repeal the act. *355 is as broad in this case as in that. It is, indeed, entirely unlimited. | Under the rule established in that case, no mere addition to or alteration of the charter, however great, would operate to discharge a stockholder from his obligation to the corporation. To work such a discharge the charter must be repealed, or the legislation must be such as virtually to subvert the corporation itself; or, at least, to destroy its identity. A mere change of name has been repeatedly held not to have that effect. (Mayor of Scarborough v. Butler, 3 Lev., 238; Mayor of Colchester v. Seaber, 3 Burr., 1866; Mellor v. Spateman, 1 Saund., 344, note 1; Overseers, &c., of North Whitehall v. South Whitehall, 3 Serg. & Rawle, 117.) In other respects the change in this case is not materially greater than in that of The Schenectady and Saratoga Flanlc Road Company v. Thatcher (supra). It does not become necessary, therefore, to take into consideration the soundness of the principles advanced in the case of The Hartford and New Haven Railroad Company v. Croswell (5 Hill, 383). That case is in direct conflict with several English cases, as well as with some decided in this country; and a portion of its reasoning would, I think, require to be examined with some care before it is finally adopted. (Midland Railway Company v. Gordon, 16 Mees. & Wels., 803, Stevens v. The South Devon Railway Company, 13 Beav., 48; Ffooks v. The London and South Western Railway Company, 19 L. & Eq. R., 7; Irwin v. The Turnpike Company, 2 Penn., 466; Gray v. The Monongahela Navigation Company, 2 Watts & Serg., 156.)
The defence set up at the trial connected with The Buffalo, Corning and New-York Railway Company was properly overruled. The bad faith offered to be proved was that of persons who, although officers of the Attica and Hornellsville Railroad Company, were nevertheless not acting in behalf and by the authority of that company, but as individuals. Again, a fraudulent misrepresentation, by which the defendant was induced to subscribe to the stock of *356 another company, could not discharge him from his obligations to the Attica and Hornelliville Company, nor could any misconduct of the latter company, hy means of which the defendant was injured as a stockholder of such other company, have that effect.
The judgment of the supreme court should, I think, be affirmed
Judgment affirmed.