## Otis, Receiver, &c. vs. Harrison.

Where, upon contracts of insurance made after the act of June 25, 1853, providing for the incorporation of fire insurance companies, took effect, premium notes were given by the insured, each being for twenty times the amount of the premium paid in cash; *Held* that the notes were within the prohibition of the 13th section of the act, which declares that in no case shall a premium note be more than five times the whole amount of the cash premium; and that they were therefore illegal and void, and could not be enforced against the maker.

*Held, also,* that by force of the 20th section of the act of 1853, the prohibition in regard to the amount of the premium notes, contained in the 13th section, applies to, and is to be observed by, companies formed under the act of April 10, 1849, and which were in existence at the time the act of 1853 took effect.

*Held,* further, that the giving of such notes was an act not merely *ultra vires,* but was an act expressly prohibited by law.

No right can be derived from any agreement made in express opposition to the laws of the place where it is made.

The act of April 9, 1859, to amend the charter of the Poughkeepsie Fire Insurance Company, does not affect the question of the validity of premium notes previously taken by that company, in violation of the act of 1853.

ACTION by the plaintiff as receiver of the Poughkeepsie Insurance Company, upon four premium notes, made by the defendant upon effecting insurances with the company. On the trial the plaintiff was nonsuited, on the sole and only ground that the notes in suit exceeded five times in amount the amount of cash premium paid. And the exceptions were ordered to be heard in the first instance at general term.

*H. A. Nelson,* for the plaintiff.

*A. J. Parker,* for the defendant.

*By the Court,* Brown, J.  The plaintiff is the receiver of the Poughkeepsie Insurance Company, a corporation organized August 16, 1850, under the provisions of the act of the 10th of April, 1849, for the purpose of carrying on the business of insurance.  The company was dissolved by an order

Otis *v.* Harrison.

made at a special term of this court, held on the 24th of
April, 1860, and John H. Otis, the plaintiff, appointed the
receiver of the corporation, with the usual powers to close up
and settle its business and affairs. The action is brought to
recover the moneys mentioned in four several promissory
notes made by the defendant, and given to the company for
premiums of insurance upon four policies of insurance bear-
ing even date with the notes issued to the defendant, to wit:
One note for $400, dated September 14th, 1855; one for
$300, dated February 19th, 1856; one for $200, dated Sep-
tember 14th, 1858; and one for $300, dated February 19th,
1859. It was in proof that the policy for which the first note
was given was upon a contract of insurance for three years,
and for $2000, and the cash premium paid thereon was $20.
The policy issued upon giving the second note was upon a
contract for $1500, for three years, and the cash premium
paid thereon $15. The third note was given upon a policy
containing a like contract for three years, and for the sum of
$1000, and the cash premium paid thereon $10. And the
fourth note was given upon obtaining a similar policy for
$1500, and the cash premium paid thereon being $15. So
that the cash premium paid at the time of effecting the insur-
ance upon the four policies, respectively, was just five per
cent upon the sums expressed in the premium notes. Or, to
express the same idea in another form, each note given upon
effecting the policy of insurance was made for the payment
of a sum of money twenty times greater than the sum paid
at the same time as cash premium. It also appeared in evi-
dence that losses to a considerable amount had occurred upon
policies issued by the company, and for the payment of
which it had become liable, and that an assessment had been
made in due form upon the premium notes held by the com-
pany, including the notes in suit, for the payment of such
losses. The trial was had before Mr. Justice EMOTT and a
jury, at the Dutchess circuit, in April, 1861. The facts to
which I have referred appeared upon the plaintiff's own

showing, and he was nonsuited upon the ground that the notes set out in the complaint, upon which the assessment was made, were void because each of such notes exceeded five times the sum paid as cash premiums. The counsel for the plaintiff excepted, and the exceptions were ordered to be heard at the general term.

Two questions were made upon the argument : 1st. Whether the Poughkeepsie Insurance Company is subject to the act of the 25th June, 1853, to provide for the incorporation of insurance companies, and is to be governed by its provisions; and 2d. Whether the notes upon which this action is brought are within the prohibition of the 13th section of the act, and upon that account illegal and void.

The 5th section of the act of the 10th April, 1849, under which the plaintiff's insurance company was organized, after putting a limitation upon the capital of companies organized in the counties of New York and Kings, and declaring of what such capital shall consist, declared that no mutual insurance company in any other county in the state should commence business until agreements had been entered into for insurance, the premiums on which shall amount to one hundred thousand dollars, and the notes received therefor payable within twelve months from the date thereof, which were to be considered as its capital, and negotiable and collectible for the purposes of paying losses which might accrue. The act did not require the payment of any cash capital, nor the payment of any part of the premiums upon insurance effected in cash, but the business might have been prosecuted upon a capital composed exclusively of the notes of those insuring their property with the company. The 15th section declared the duration of the charters formed or extended under the act, but the legislature therein reserved the right at any time to alter, amend or repeal the act, or dissolve and provide for closing up the business and affairs of any company formed under it. The business of insurance upon such a basis was an untried experiment in this state, and experi-

ence soon demonstrated that nothing short of a cash capital, in whole or in part, available at all times for the liquidation of losses and the execution of contracts, would fulfill one of the principal conditions of a safe, adequate and efficient system of insurance. Accordingly, when it was subjected to legislative revision and amendment, in the act to provide for the incorporation of fire insurance companies, passed June 25th, 1853, we find a provision of this kind inserted in the 13th section; that " the directors or trustees of such company shall have the right to determine the amount of the note to be given, in addition to the cash premium, by any person insured in such company; but in no case shall the note be more than five times the whole amount of the cash premium." The object of this provision is plain enough. It did not exist in the original act, and was introduced into the amendment to correct and cure an acknowledged evil. That was the want of sufficient cash capital. Its object was to insure to the companies conducting insurance upon the mutual plan, cash resources available for the payment of losses and the fulfillment of their contracts, equal to at least one-sixth part of their capital. The provisions of the 6th section evince the same purpose, by prohibiting companies organized out of the counties of New York and Kings from commencing the business until agreements shall have been entered into for insurance with at least 200 applicants, the premiums on which shall amount to $100,000, of which $20,000 shall have been paid in cash, and notes of solvent parties, founded on actual and bona fide applications for insurance, shall have been received for the remaining $80,000. The prohibition then, of the 13th section, in regard to the amount of the notes taken upon issuing a policy of insurance, is clear and explicit. In no case shall the amount of the note exceed five times the amount of the cash premium. This direction and prohibition is what the legislature have thought fit to incorporate into the organic law of this class of insurance companies, and we shall consider presently the consequences which ensue

upon its violation. It will be seen that the act of the 25th June, 1853, is not an amendment of existing statutes, by engrafting thereon new provisions and abrogating others. It is general in its purposes and provisions, substituting a system perfect and complete in itself. The 28th. section repeals so much of the act of April 10th, 1849, as relates to fire and inland navigation insurance, but the repealing clause is declared not to affect the companies organized under that act. Section 20 contains provisions material to the present inquiry. It declares that such companies as may have been incorporated or extended under the act of the 10th April, 1849, "are hereby brought under all the provisions of this act, except that their capitals may continue of the amounts named in their respective charters, during the existing term thereof, and are also entitled to the privileges granted by such charter." It seems indisputable that by force of this 20th section, the prohibition in regard to the amount of the premium notes found in the 13th section, applies to and was to be observed by companies formed under the act of April 10, 1849, and which were in existence at the time the act of the 25th June, 1853, took effect. The case of *Devendorf* v. *Beardsley* (23 *Barb.* 656) is an authority upon this point, if any is needed, and settles the rule of construction, so far as this court can settle it. (*See also the dictum of Mr. Justice Allen in Thomas* v. *Whallon,* 31 *Barb.* 176.)

That the four notes in controversy are within the prohibition of the statute, is too plain for argument. They were given upon contracts of insurance made after the act of the 25th of June, 1853, took effect. They are therefore illegal and void, and cannot be enforced against the defendant. This is not a case where a corporation has exceeded its powers in making a contract not authorized by its act of incorporation, or in the purchase of property in which it was not authorized to deal. When a corporation has gone beyond its powers in the acquisition of property, or by entering into executory contracts beyond the scope of its corporate powers,

considerations would arise in determining the validity of such acts, which have no application to the present inquiry. The distinction between an act *ultra vires* and an act expressly prohibited, is too obvious for comment. The making of the notes was forbidden by law. The directors of the insurance company were not only without the power to make such contracts of insurance with the defendant, Cornelius B. Harrison, but the act declared, in so many words, that they should not be made. In no case were they to issue policies whereby the company incurred, or were made liable to incur, a liability for losses, and take a note therefor greater in amount than five times the sum paid therefor as cash premium. This the legislature deemed to be a mode of insurance unstable, unsafe and pregnant with mischief to the people of the state, and they declared it should not be done. The directors were bound to know the organic law of the company, and this prohibition was written as a part of it. No right can be derived from any agreement made in express opposition to the laws of the place where it is made. "All contracts and agreements which have for their object any thing which is repugnant to justice, or against the general policy of the common law, or contrary to the provisions of any statute, are void ; and whenever a contract or agreement is entered into with a view to contravene any of those general principles, there is no form of words, however artfully introduced or omitted, which can prevent courts of law and equity from investigating the truth of the transaction ; for *ex turpi contractu actio non oritur* is a rule both at law and equity." (1 *Com. on Cont.* 30.) In *Henry* v. *The Bank of Salina,* (1 *Comst.* 83,) the rule was applied to a note discounted by the teller of a bank for his own benefit, after the bank had refused to discount it—the act being forbidden by the statute. In *Gray* v. *Hook,* (4 *id.* 449,) it was applied to an agreement in regard to an application to the appointing power of the state for an office, and the emoluments of the office. In *Pennington* v *Townsend,* (7 *Wend.* 276,) a for-

Otis *v.* Harrison.

eign incorporated company had discounted a check in this state in violation of the restraining act. The court said the act was *malum prohibitum,* and no recovery could be had. It could not be the foundation of a civil action. In *Swift* v. *Beers,* (3 *Denio,* 70,) notes made by a banking association, payable on time and with interest, were held to be illegal and void, because they were prohibited by the 4th section of the act to amend the general banking law, passed May 14th, 1840. (*See also, to the same effect, Tylee* v. *Yates,* 3 *Barb.* 222.) In *Thatcher* v. *Morris,* (1 *Kern.* 437,) the plaintiff sought to recover prize money drawn in a lottery. The court held that to enforce such a contract in the courts of this state, when by law it was forbidden, the plaintiff must aver and prove where it was made, and that by the laws of the place where made it was authorized and valid. These authorities are decisive against the plaintiff's right to recover in this action.

The counsel for the plaintiff refers to the act of the 9th April, 1859, to amend the charter of the Poughkeepsie Fire Insurance Company, as a ratification of the act of the company in regard to the notes in controversy. The first section provides for changing the name of the company; the second for the election of the directors; the third authorizes the company, under its new name, to transact the business of insurance specified in certain sections of the act of April 10, 1849; and the fourth is designed to preserve the rights and continue the liabilities of the company under its new designation. The act does not affect the question of the validity of the notes on which the plaintiff seeks to recover.

Judgment of nonsuit should be entered against the plaintiff.

[KINGS GENERAL TERM, February 10, 1862. *Emott, Brown* and *Scrugham,* Justices.]