Hyatt *v.* Whipple.

· The judgment should be affirmed with costs.

New trial granted.

[NEW YORK GENERAL TERM, May 5, 1862. *Ingraham, Leonard* and *Rosekrans,* Justices.]

————o·●·o————

HYATT, receiver, &c. *vs.* WHIPPLE and others.

In an action by the receiver of an insurance company, upon a premium note, as between the company and one of its members, the existence of the corporation is to be deemed sufficiently established.

It is not a valid objection to an extended charter, authorized by the act of 1849, that it makes a substantial change in the corporate powers originally possessed by the company. The right to alter, amend or repeal being reserved in the acts of 1836 and 1849, is substantially in all charters subsequently granted, and is a part of the contract on both sides, assented to by each member.

The assent of a corporation, by its stockholders, or by its directors, is not necessary to give validity to a legislative alteration of its charter, where the legislature has reserved the right to alter it without the company's consent.

An insurance company, chartered in 1836, was authorized by its charter to insure at such rates and upon such proportion of premium notes and of cash premium as the directors should determine. And the board of directors was required, from time to time, to fix and determine the rates of insurance, the sum to be insured, and the amount of premium notes and money to be paid for any insurance. In 1851 the company extended its charter, under the act of 1849, and changed its corporate name. The act of June 25, 1853, relative to the incorporation of insurance companies, provides that all companies incorporated or extended under the act of 1849, " are

hereby brought under the provisions of this act, except that their capital may continue of the amount named in their charters, &c., and are also entitled to *all the privileges* granted by said charters." *Held* that the right of the directors, granted by the charter of the company, to determine the amount of cash premium to be paid at the time of the insurance, was a "privilege granted" by the charter, and was therefore expressly excepted by the act of 1853 from the operation of its provisions.

Accordingly *held,* that the directors having, by virtue of the charter, fixed and determined the rates of insurance, the sum to be insured, and the amount of premium notes and money to be paid for every insurance, and having issued a policy of insurance to the defendant, after the charter of the company was extended, and taken his note for a portion of the premium, the validity of such note was not affected by the provision of the act of 1853, declaring that no premium note shall be for more than five times the whole amount of the cash premium.

THIS is an appeal from a judgment recovered by the plaintiff at the Rensselaer circuit in October, 1861, before Justice GOULD and a jury. It appeared on the trial that the plaintiff was appointed receiver of "The Rensselaer Insurance Company," and that the company was originally, in 1836, incorporated under the name of "The Rensselaer County Mutual Insurance Company." That in October, 1851, the company extended its charter, under the act of 1849, and changed its corporate name. The defendants were insured in the company after its charter was so extended. The amount of the premium note was $75, and the amount of the cash premium paid at the time of giving the note and receiving the insurance was only $10.

*C. J. Lansing* and *E. F. Bullard,* for the appellants.

*C. F. Tabor* and *W. A. Beach,* for the respondent.

·*By the Court,* PECKHAM, J. In a suit of this nature, on a premium note, as between the company and one of its members, I think the existence of the corporation ·is sufficiently established. The legislature, under the reserved right to do so, allowed this charter to be altered. The principles

involved in questions touching the obligation of contracts and their abrogation do not apply here. This right to change was substantially in the charter—was a part of the contract on both sides, assented to by each of its members. The mode of expressing the assent of the company to the change was a matter of legislative discretion, as the assent of the company to the alteration, by its stockholders or by its directors, was not necessary to give validity to a legislative change of its charter. The legislature had reserved the right to alter it without the company's consent.

That the legislature may have made unwise or unjust alterations is not improbable. That is an inseparable incident to legislation, but does not affect or impair its validity, except in certain specified cases. See, on this subject, *Schenectady &c. Plank Road Co.* v. *Thatcher*, (1 *Kern.* 102;) *Northern Rail Road Co.* v. *Miller*, (10 *Barb.* 260;) *White* v. *Syr. and Utica Rail Road Co.*, (14 *id.* 559;) *Troy and Rutland Rail Road Co.* v. *Kerr*, (17 *id.* 581.)

I incline to think the only question in the case is, was the note void because it was more than five times as large as the cash premium.

The statute expressly declares, that " in no case shall the note be more than five times the whole amount of the cash premium." (*Laws of* 1853, *p.* 909, § 13.) In this case it is more than seven times as large. In a case very much like this, this court, in the second district, has held the note void. (*Otis* v. *Harrison*, 36 *Barb.* 210.) There the company was organized under the act of 1849, and no particular amount of cash premium was required under that act. In the case at bar the company was chartered in 1836, and by its charter was authorized to insure at such rates and upon such proportion of premium notes and of cash premium as the directors should determine. The 8th section of the charter is as follows:

" The board of directors shall from time to time fix and determine the rates of insurance, the sum to be insured, and the amount of premium notes and money to be paid for any

insurance. Every person becoming a member of this company shall, before receiving his or her policy, deposit with the secretary, or any authorized agent, his or her promissory note for such a sum of money as the directors may determine, which shall be paid at such time or times, and in such sum or sums, as the corporation may from time to time require; and such cash premium shall be paid thereon at the time of effecting insurance, as shall be required by the by-laws of the company. Any person applying for insurance may pay a definite sum in money, to be fixed by the board of directors, in full for said insurance, and in lieu of a promissory note."

The act of 1853, § 20, provides that all companies incorporated or extended under the act of 1849, "are hereby brought under all the provisions of this act, except that their capital may continue of the amount named in their charters, during the existing term thereof, and are also entitled to all the privileges granted by said charters." Under these provisions it is insisted for the plaintiff, that the right of the directors, granted by the charter, to determine the amount of each premium to be paid at the time of the insurance, was a "privilege granted" by the plaintiff's charter, and therefore expressly excepted by the 20th section of the act of 1853. (*Laws of* 1853, *p.* 913, § 20.) This point was not fully argued or answered by the appellants, but they relied entirely upon the decision of this court in *Otis* v. *Harrison,* before cited.

The purpose and policy of the act of 1853, in requiring a given proportion of the premium of insurance to be paid in cash, are no doubt correctly presented in that case. It was to give greater strength to the companies, and therefore greater security to the parties insured. But is that policy or purpose in any degree promoted, by declaring the notes taken by such companies contrary to that act to be void? Such a result would essentially weaken instead of strengthening the companies. In that case, in all human probability, the par-

ties acted in good faith on both sides, intending no wrong and no violation of law—acted doubtless in mutual ignorance of the law. Probably a large majority of the company has acted on the assumed validity of these notes, received pay for losses and paid premium notes. A small portion has held policies, sustained no loss, but relied on the policy as security, felt a safety, and now seek immunity from their share of losses by this wholesome provision. Did the legislature ever intend such a consequence? In certain cases of corruption, of gaming, &c., after its language of prohibition, it expressly declared all securities, notes, &c. taken for such consideration, to be void. No such declaration is found in this statute. Was this provision ever intended to be more than a direction to the officers of the company as to the manner of doing business; and that if they violated it they should be liable for all damages, and the company itself should be liable to be dissolved. I do not now intend to say that the court, in *Otis* v. *Harrison,* has not followed decisions that harmonize with its conclusions; though all of the cases referred to may be sustained upon principles of public policy that have no force in this case. But it is certainly true that the courts have lately been promulgating a more healthy and rational doctrine in regard to the violation of a statute. (*See* 15 *N. Y. Rep.* 1; 18 *id.* 240, &c.) It may well be that a legislative direction on this subject is necessary. If practicable, it is surely very desirable. I believe great injustice is the consequence of upholding *Otis* v. *Harrison.* But I am not prepared to say that it is contrary to law. Certainly this court should not assume to say so unless some plain mistake has been made. *Otis* v. *Harrison,* however, does not touch the point whether the 20th section of the act of 1853 exempts this company from the provision there made as to the necessary proportion to cash of the premium note. The point was not made, if the facts would warrant it.

It is a safe rule to follow the legislative intent in interpret-

ing a statute, when that intent can be ascertained. But when the language is plain, it is entirely unsafe to rest upon any supposed or assigned meaning of the statute not in harmony with its obvious language. The 20th section of the act of 1853 expressly exempts from its provisions "all the privileges granted by the charters" of the old companies. Is not the right to decide by its by-laws as to "the amount of cash premium to be paid at the time of effecting insurance," "a privilege granted by its charter?" Many requirements of the act of 1853 may be applicable to this company without touching this "privilege." In my judgment this right of the company to decide, falls within the plain language of the exception. In such case the whole duty of the courts is performed in carrying that plain language into execution. What could be called a privilege in the charter if this be not?

If this were a question of legislative intent, it could be urged with some force that the law makers might have looked with some respect upon the "privileges" in the charters of companies that like this had maintained their credit for nearly a quarter of a century, and purposely declined to interfere with them.

I think the judgment should be affirmed.

Judgment affirmed.

[ALBANY GENERAL TERM, May 5, 1862. *Hogeboom, Peckham* and *Miller,* Justices.]