## Commonwealth *versus* Fayette County Railroad Company.

1. A railroad company was incorporated subject to the provisions of the Railroad Law of February 19th 1849, with a provision that it should not be taxed until its dividends amounted to 6 per cent. per annum. A subsequent act subjected all corporations to a tax on each 1 per cent. of dividend. *Held*, that the company was taxable under the latter act on a dividend less than 6 per cent. per annum.

2. The provision in the Act of 1849 allowing the legislature to amend, &c., charters, authorized the imposition of the tax by the latter act.

3. Whenever a power to repeal, alter or amend a charter is reserved in it, its exercise does not impair the obligation of the contract.

May 20th 1867. Before WOODWARD, C. J., THOMPSON, READ and AGNEW, JJ. STRONG, J., absent.

Error to the Court of Common Pleas of *Dauphin county.*

The Fayette County Railroad Company was incorporated by Act of May 1st 1857. By the 5th section of the act it is provided that the stock of the company shall not be subject to a tax until the net earnings thereof shall amount to at least 6 per centum per annum upon the capital invested, and by the 1st section, that the company shall be "subject to the provisions of the act regulating railroad companies, approved February 19th 1849," by the 20th section of which the legislature reserves the power to resume, alter or amend any charter granted under it. By the Act of April 12th 1859, entitled "An act to equalize taxation upon corporations," it is provided, that from and after the passage of said act, the capital stock of all companies whatever, incorporated by or under any law of this Commonwealth, shall be subject to, and pay into the treasury of the Commonwealth annually, at the

[Commonwealth v. Fayette County Railroad Co.]

rate of one-half mill for each one per cent. of dividend made or declared by such company; and in case of no dividend being made or declared, then three mills upon a valuation of the capital stock of the same, agreeably to the 33d section of the Act of April 29th 1844, entitled "An act to reduce the state debt and incorporate the Pennsylvania Railroad Company," and repeals thereby so much of any existing law as is inconsistent with said provisions. All unsettled accounts to be adjusted in accordance with the provisions of said act.

On the return by the defendants that they had made a dividend of $3\frac{55}{100}$ per cent. for the year ending the 1st Monday of November 1863, the auditor general, on the 14th of April 1864, settled an account against them for tax on that dividend amounting to $190.63, which was duly approved by the state treasurer. The defendants appealed from the settlement, and specified amongst their objections:—that the stockholders invested in the stock of the company on the faith of the provision in the act that no tax should be charged till the dividends reached 6 per cent. per annum, that the Act of 1859, as to them, would be impairing the obligation of the contract, and that the act was intended to apply only to those cases where the legislature had made no contract to the contrary.

On the 28th of November 1865, there was a verdict for the Commonwealth for $206.28, the court reserving two points, viz.:—

1. Does the Act of 1859 apply to this corporation?

2. If so applied, is the act constitutional?

The court (Pearson, P. J.) afterwards held the act, so far as it applied to this company, to be unconstitutional, and entered judgment for the defendants non obstante veredicto.

The Commonwealth took a writ of error, assigning for error the judgment on the reserved points.

*Brewster*, Attorney-General, for the Commonwealth, cited Acts of the 12th April 1859, § 1, Purd. 951, pl. 127, Pamph. L. 529; 29th April 1844, § 33, Purd. 949, pl. 118, Pamph. L. 497, May 1st 1857, Pamph. L. 665; Charles River Bridge *v.* Warren Bridge, 11 Pet. 420; Brewster *v.* Hough, 10 N. H. R. 138; Providence Bank *v.* Billings, 4 Pet. 514; West River Bridge *v.* Dix, 6 How. 507; Richmond Railroad Co. *v.* Louisa Railroad Co., 13 Id. 71; Gossler *v.* Georgetown, 6 Wheat. 596, 598; East Hartford *v.* Hartford Bridge Co., 10 How. 535; McLane *v.* U. States, 6 Pet. 404; Yeaton *v.* U. States, 5 Cranch 281; U. States *v.* Morris, 10 Wheat. 246; 2 Russ. & M. 35; Phalen *v.* Virginia, 8 How. 163; Balt. & Susq. Railroad *v.* Nesbit, 10 Id. 395; U. States *v.* Hodge, 3 Id. 534; Watson *v.* Mercer, 8 Pet. 88; 2 Sanf. S. C. R. 355.

[Commonwealth *v.* Fayette County Railroad Co.]

*N. Ewing*, for defendant in error, cited Acts of May 1st 1857, April 12th 1859, April 29th 1844, *supra*, February 19th 1849, § 20, Purd. 838, pl. 11, Pamph. L. 83; Iron City Bank *v.* City of Pittsburg, 1 Wright 340; Act April 16th 1850, Purd. 87, *et seq.*, Pamph. L. 477; Street *v.* Commonwealth, 6 W. & S. 209.

The opinion of the court was delivered, October 31st 1867, by

Read, J.—The learned judge in the court below assumed that the special Act of the General Assembly, authorizing the incorporation of the Fayette County Railroad Company, formed a contract between the state and the company, and was not affected by the 26th section of the 1st article of the constitution, which did not become a part of that instrument until several months after the 1st day of May 1857, the date of its passage. Looking at it in this point of view only, we should probably agree with the court below, whose opinion is sustained by the authorities cited in it in our own case of The Iron City Bank *v.* The City of Pittsburg, 1 Wright 340, and in the 8th edition of Angell & Ames on Corporations in 1866, p. 479, &c.; and see Gilman *v.* City of Sheboygan, 2 Black 510.

There is, however, another view of the question in this case which does not appear to have been considered by the court below, and which in our opinion must govern our decision.

In order to preserve state control over acts of incorporation, the power to repeal, alter or amend them has been sometimes reserved in the constitution, or in general laws on the subject, or in any special acts of incorporation, and wherever it is so reserved its exercise does not impair the contract of which it forms a constituent part.

The special Act of Assembly in this case is to be found in the Pamphlet Laws of 1857, and is entitled " An act to incorporate the Fayette County Railroad Company." The 1st section authorizes the organization of the company, " subject to all the provisions of the act regulating railroad companies in this Commonwealth, approved the 19th day of February, A. D. 1849, and so far as the same are not altered or supplied by this act."

The 2d, 3d and 4th sections relate to the capital-stock subscriptions by the borough of Uniontown and to the borrowing of money, and the 6th to the time of commencing and completing the construction of the road, and the use of it. The 5th section authorizes the president and directors to pay, if they deem it expedient, 6 per cent. interest on all instalments paid in, to non-defaulting stockholders, until the road is completed. " *Provided, also, that the stock of the said company shall not be subject to a tax* in consequence of the payment of the interest hereby authorized" nor " *until the net earnings of the said company shall*

*amount to at least 6 per cent. per annum upon the capital invested.*"

By an "Act to equalize taxation upon corporations," passed 12th April 1859, Pamph. L. 529, the capital stock of all companies whatever, incorporated by or under any law of this Commonwealth, or that may be hereafter incorporated, shall be subject to and pay a tax into the treasury of the Commonwealth annually, at the rate of 1 mill for each 1 per cent. of dividend made or declared by such company.

Upon the return of the defendants the auditor-general and state treasurer settled an account charging them on their dividend of $3\frac{55}{100}$ per cent. with a tax of $\frac{155}{200}$ mills, amounting to $190.63, which the defendants say they are secured from paying by the 5th section of their charter. This railroad company is "subject to all the provisions of the acts regulating railroad companies" above mentioned, one of which is contained in the 20th and last section in the following words: "Section 20. That if any company incorporated as aforesaid shall at any time misuse or abuse any of the privileges granted by this act or by the special act of incorporation, the legislature may revoke all and singular the rights and privileges so granted to such company: and the legislature hereby reserve the power to resume, alter or amend any charter granted under this act, and take for public use any road constructed in pursuance of such charter: *Provided*, That in resuming, altering or amending said charters no injustice shall be done to the corporators; and that in taking such roads for public use full compensation shall be made to the stockholders."

The Act of 12th April 1859 expressly repeals any existing law inconsistent with the provision as to taxation, and as the defendants are conceded to be within the words of the act, the limitation of taxation in their 5th section is clearly altered or repealed. This seems to be assumed to be the necessary effect of such a law imposing a tax where none was imposed before, in The Iron City Bank *v.* City of Pittsburg, 1 Wright 340, 348.

The only remaining question, therefore, is, is the 20th section of the Act of 1849 altered or supplied by any section of the Act of 1857? I can find no such language in any part of the act, nor is there any reason why this charter should not be subject to

1. The legislative power to revoke the privileges granted to the company if it misused or abused them.

2. To the power to resume, alter or amend the charter.

3. To take the road for public use, making full compensation to the stockholders.

Is it possible that the legislature ever intended that each and every of these salutary provisions should not form a constituent and fundamental part of the defendants' charter? To this there can be but one answer. This company, if not controlled by the

20th section, has a perpetual charter which the legislature cannot touch however injurious it may become to the community.

But it is said by this alteration injustice will be done to the corporators. To this we answer, that following the spirit of our decision in 1 Wright, it must be assumed that this court will never hold a tax law applicable alike to all the corporations of a great Commonwealth to be an act of injustice. "We have repeatedly said," says the present Chief Justice, "that the taxing power is exclusively legislative, and not at all judicial, and that until the exercise of it become so extravagant and wanton as to be no longer in the nature of a legislative function we would not attempt to arrest it."

The principles involved in this case are discussed with great ability in the New York Court of Appeals in the Matter of Oliver Lee & Co.'s Bank, 7 Smith 9, and affirmed in the Matter of the Reciprocity Bank, 8 Id. 9.

> The judgment is reversed, and judgment entered on the verdict for the Commonwealth of Pennsylvania, with interest from the day of the verdict.