The opinion of the court was delivered by
White, J.
The defendant, a corporation created for charitable purposes by legislative charter in 1853, having acquired in 1874 a piece of real estate situated in this city, consisting of lots of ground with the buildings and improvements thereon, resists the payment of the taxes levied by the city of New Orleans for 1876 on the ground of exemption.
It is conceded on both sides that the property claimed as exempted is a flre-proof cotton-press now rented and used as such, and in no manner directly used by the asylum, although the revenues thereof are applied to the benevolent and charitable purposes of the corporation.
*293 Under this state o£ facts we are of opinion that the ownership of the property by the corporation and the application by it of the revenues derived from the rent does not constitute the actual use covered by the exemption from taxation of property actually used for charitable purposes. We apprehend such exemption to apply to property directly used and not in directly by the application of the rents which may result from it. These conclusions are in accord with the jurisprudence of the State. Nearly twenty years ago this court drew the distinction between property used by a charitable corporation and property from which it derived revenue. New Orleans vs. Congregation Dispersed of Judah, 15 A. 390. Subsequently, in New Orleans vs. Bank of Lafayette, 27 A. 836, this court held that article 118 of the constitution, giving power to the General Assembly to exempt property actually used for church, school, or charitable purposes, was enumerativo and hence limitive ; that all grants of exemption made after the adoption of this provision, of property not in terms covered by it, were void, and that all prior grants of exemption inconsistent therewith were repealed thereby unless protected by contract. In the enforcement of these conclusions in City vs. St. Patrick’s Hall Association, 28 A. 512, it was determined that property occupied by a charitable association for the execution of the purpose of its being might be constitutionally exempted by the General Assembly from taxa" tion; but that an exemption of property belonging to'a corporation and not used by it directly, but only used by applying the revenues received from it, was violative of the constitutional provision already referred to, and hence stricken with nullity.
Under this settled j urisprudence there can be no doubt of the liability of the property in controversy, unless removed from the general rule by some exception. 'Such exception is claimed as resulting from the charter of the defendant corporation, by which it is contended that a contract was created divesting the State of all power to repeal the exemption claimed. The provision of the charter relied on is as follows: “ That the said corporation shall have the same exemption from taxation as was enacted in favor of the Orphan Boys’ Asylum of New Orleans by the act approved March 12,1836.” The provision of the act of 1836 referred to is- as follows : “That from and after the passage of this act, all the property real and personal belonging to the Orphan Boys’ Asylum of New Orleans be and the same is hereby exempted from all taxation, either by the State, parish, or city in which it is situated, any law to the contrary notwithstanding.” The mere existence of this statute would not alone entitle the property to exemption, for as we have already seen all statutory exemptions incompatible with the existing constitutional provision have, by it, been repealed. The solitary question, therefore, is, was this exemption-a contract of such a nature as to invest the corpora *294 tion with such a right as to remove it from all subsequent legislative control? We think not, and in reaching this conclusion we waive all controversy as to the power of the General Assembly to divest its successors of so essential an attribute of sovereignty as the power of taxation. We grant to its fullest extent the doctrine of contract as resulting from the creation by the General Assembly of a private corporation. When the act of incorporation relied on was passed the general laws of the State provided as follows: “ A corporation legally established may be dissolved : 1. By an act of the Legislature, if they deem it necessary or convenient to the public interest; provided, that when the act of incorporation imports a contract, on the faith of which individuals have advanced money or engaged their property, it can not be repealed without providing for the re-imbursement of the advances made, or making full indemnity to such individuals. * * * O. 0. of 1825, art.-438. This article existed in the Gode of 1808, and indicates an anticipation by the wise and enlightened men by whom our Code was compiled, not only of the doctrine of contract subsequently enunciated by the Supreme Court of the United States, but also a keen appreciation of the dangers to society resulting from paralyzing the power of subsequent legislatures to legislate for the public convenience or well being.
This general provision being in existence at the time of defendant’s grant, it became by necessary legal implication a part of it, and reserving as it did the right to repeal the charter whenever convenient to the public interest, reserved also, as the greater contained the less, the same absolute power of modification. The charter was a special law and contained no repealing clause. Acts of 1853, p. 228. It did not therefore expressly repeal the general law, nor did it do so by implication, for thefe is no incompatibility between the grant of a franchise or privilege and a reservation of the power to revoke when deemed necessary for the public interest. Even had the act of incorporation contained the usual clause repealing all laws inconsistent therewith, our conclusion would be the same, for the repealing clause would have to be express in its terms to include the repeal of a general law not in terms conflicting with the later law, nor can it be said that the general law was not intended to apply to corporations by which a contract was created, for it in express words embraces charters of that character. The application of a prior general law to legal rights acquired by an act of incorporation would be only applying to such rights the legal provisions applicable to other legal obligations, for the general theory, as to the existence of legal rights, is, that they are to be examined with reference to the general law in being at the time of their acquisition. In Guillotte vs. New Orleans, 12 An. 434, Mr. Chief Justice Merrick said : “ In these and like eases there is no pretense that the obligation o.f a con *295 tract had been impaired because the law in force at the time enters into and forms part of the contract.”
We need not however seek to fortify our conclusions by authority drawn from analogy. That the provisions of the article of the Code to which we have referred entered into the grant of subsequent legislative charters has long since been enunciated from this bench. “I have,” said Mr. Justice Rost as the organ of this court in Palfrey vs. Paulding, 7 An. 366, “ examined the case on the hypothesis that an acceptance of the act of 1839 on the part of the bank was necessary. But I do not wish to be understood as deciding that point. If charters are contracts, they are contracts which the legislature may in certain cases dissolve. The powers it possesses over charters subsequently granted, by the first paragraph of article 438 C. C. are not the less real for having been dormant heretofore.” * * * * * *
The jurisprudence of the Supreme Court of the United States and of the States of this Union is full of examples of the enforcement of the principles which this court thus expressed, and to which we give our adhesion. In many of the other States as a consciousness developed of the far-reaching effects of the doctrine enunciated by the Supreme Court of the United States in Dartmouth vs. Woodward, general laws were enacted reserving to the law-making power the right to alter or repeal any subsequent charters. Such statutes have been uniformly held to enter into all charters granted thereafter, and thereby to take them out of the operation of the law of contracts as taught in Dartmouth vs. Woodward.
That a general power to repeal or modify a charter enters into the charter, and pro tanto divests it of the character of a contract, is now the settled opinion of the Supreme Court of the United States. “ Such power, also, that is the power to alter, modify, or repeal an act of incorporation,” said Mr. Justice Clifford in Miller vs. the State, 15 Wall. 488, “ is frequently reserved to the State by a general law applicable to all acts of incorporation or to certain classes of the same, as the ease may be, in which case it is clear that the power may be exercised whenever it appears that the act of incorporation is one which falls within the reservation, or that the charter was granted subsequent to the passage of the general law, even though it contains no such condition nor any allusion to such a reservation.” Said the same learned justice, as the organ of the court in the case of Holyoke Company, vs. Lyman, 15 Wall. 511, in speaking of a claimed contractual exemption from taxation resulting from a charter, “ such a charter when accepted by the corpora-tors is undoubtedly a contract that the powers, privileges, and franchises granted shall not be restrained, controlled, or destroyed without their consent, unless a power for that purpose is reserved to the legislature *296 in the act of incorporation or in some prior general law in operation at the time the act of incorporation was passed.” See, also, Tomlinson vs. Branch, 15 Wall. 469 ; Railroad Company vs. Maine, 96 United States, 510.
These authorities alone would be decisive of the present controversy; but they do not stand alone; they are but the expression of the concluded opinion of the various State courts, where the question has been presented for adjudication. “But all acts of incorporation,” says the Supreme Court of Massachusetts in General Hospital vs. State Mutual Assurance Company, “ passed since the eleventh of March, 1831, which contain no express provision limiting their duration, are by the provisions of the statutes of the commonwealth existing from that period to the present subject to alteration, amendment, or repeal.”
“The act incorporating the defendants was passed in the year 1844, long after the enactment of the revised statutes, and was of course accepted by the corporators subject to the provisions of those statutes.” 4 Gray 234.
A charter is a contract between the State and the corporators, and the corporation takes the grant subject to the limitations contained in the act of incorporation. If no power of repeal is reserved, none can be exercised; but when a charter itself or a general statute provides that the charter is subject to repeal by the legislature at its pleasure, the legislature has the right to exercise its power summarily and at will, and its action being a legislative and not a judicial act, can not be reviewed by the courts, unless it should exercise its powers in such a manner as to clearly violate the principles of natural justice. Lathrop vs. Stedman, 42 Conn. 583 ; Snydam vs. Moore, 8 Barb. 362 ; Olive, Lee & Co.’s Bank, 27 N. Y. 9 ; Hyatt vs. Whipple, 37 Barb. 595 ; Commonwealth vs. Fayette R. R. Co. 55 Pa. 452 ; Bangor vs. Smith 47 Me. 34 ; West Wisconsin R. R. Co. vs. Supervisors, 35 Wis. 257.
By a provision then in the defendant’s charter the right to repeal the same, and necessarily the right to modify, for the greater included the less, was by necessary legal implication reserved, and the exercise of this reserved power by the convention of 1868 divested no vested right and impaired the obligation of no contract. True, the general law in existence at the time of the granting of the charter relied on, while reserving the right to repeal whenever deemed convenient for the public interest, provided also that when the act of incorporation imported a contract upon the faith of which individuals had engaged their property or advanced money that the repeal or modification could only be made by providing for a re-imbursement of the money actually advanced.
This restriction upon the reserved power however has no applica *297 tion to the case before us, because the property now claimed as exempt was acquired by gratuitous donation by the corporation after the adoption of the constitution of 18C8, and consequently after the repeal of so much of their charter as exempted from taxation their property not embraced within the limits of exemption allowed by that constitution. When a case of prior acquired property presents itself it will be time enough to express our opinion thereon.
These views dispose of the matter at issue, and fix beyond peradventure the liability of the property to the taxation claimed. We have not considered the arguments of expediency which have been so strongly pressed upon our attention. Our duty is to enforce the constitution and apply the law as we find it.
The judgment is affirmed.